STATE OF NORTH CAROLINA v. DINO ROYAL COX
STATE OF NORTH CAROLINA v. WESLEY CONRAD WARD,
ALIAS JAMES THOMAS
STATE OF NORTH CAROLINA v. JAMES GARY,
ALIAS TIMOTHY JOHNSON

No. 68

(Filed 10 May 1972)

1. **Criminal Law § 36.1; Indictment and Warrant § 17— date of kidnapping — variance — alibi — absence of prejudice**

There is no merit in defendants' contention that they were prevented from developing any alibi they may have had by the fact that the indictment charged them with a kidnapping on 17 December 1970 and all the evidence tended to show that the crime occurred on 10 December 1970, where defense counsel assured the court before trial that he was fully aware that the State contended the crime was committed on 10 December 1970, and defendants were arrested during the early morning of 11 December 1970 and thereafter were in the custody of State or federal officers.

State v. Cox and State v. Ward and State v. Gary

2. **Criminal Law § 111; Kidnapping § 1— kidnapping trial — charge on robbery and conspiracy**

The trial court in a kidnapping prosecution did not err in charging the jury on the crimes of robbery and conspiracy where the facts tending to prove defendants' participation in those two crimes constitute an integral part of the proof of the kidnapping for which they were indicted.

3. **Criminal Law § 68— reference to "he" and "they"**

Testimony by two bank employees, who could not identify defendants, with reference to what "he" or "they" did during a robbery of the bank and a kidnapping of one of the employees was competent when considered in connection with other State's evidence identifying defendants as the persons who committed the bank robbery and kidnapping.

4. **Criminal Law §§ 15, 91— continuance — change of venue — denial by court**

The trial court did not abuse its discretion in the denial of defendants' motions for a continuance and for a change of venue of their kidnapping trial.

5. **Criminal Law § 87— leading questions**

The trial court did not abuse its discretion in allowing the solicitor to ask leading questions of a State's witness in this kidnapping prosecution.

6. **Criminal Law § 66— identification testimony — absence of lineup — voir dire**

The trial court did not err in the denial of defendants' motion that a *voir dire* hearing be conducted to determine the admissibility of a police officer's identification testimony where there was no evidence that the officer had identified defendants in a pretrial lineup or confrontation.

7. **Criminal Law § 66— counsel at lineup — identification by officer at arrest scene**

The *Wade* and *Gilbert* decisions, relating to the right to counsel at a lineup, do not apply to a police officer's identification of defendants at the scene of their arrest by other officers as the persons who a few hours before had eluded pursuit and arrest by the identifying officer.

8. **Criminal Law § 34— evidence of guilt of another crime — same transaction rule**

Evidence that defendants had pleaded guilty in federal court to the armed robbery of a bank was properly admitted in the trial of defendants for kidnapping an employee of the bank, where the two crimes were parts of the same transaction and were so connected in point of time and circumstance that one cannot be fully shown without proving the other.

State v. Cox and State v. Ward and State v. Gary

9. Criminal Law §§ 75, 169— incriminating statements — written waiver of counsel — harmless error

The trial court in a kidnapping prosecution erred in the admission of in-custody incriminating statements made by one defendant where the State failed to produce and offer in evidence at the *voir dire* hearing a written waiver of counsel executed by that defendant in compliance with the statute then in effect and codified as G.S. 7A-457(a); however, such error was harmless beyond a reasonable doubt in the light of the mass of other evidence of defendants' guilt of the kidnapping, including evidence that defendants had pleaded guilty to a bank robbery which was part of the same transaction and that the same persons committed the bank robbery and kidnapping.

APPEAL by Dino Royal Cox, Wesley Conrad Ward, alias James Thomas, and James Gary, alias Timothy Johnson, under G.S. 7A-27(a), from *Johnston, J.,* April 13, 1971 Session of GUILFORD Superior Court, docketed and argued as No. 96 at Fall Term 1971.

Identical indictments were returned against the three appellants, each charging that the defendant named therein on December 17, 1970, "did unlawfully, wilfully, feloniously and forcibly kidnap Mrs. Paul Richardson, without lawful authority."

Upon determinations of indigency, the Public Defender for the Eighteenth Judicial District, Wallace C. Harrelson, Esq., was appointed as counsel for each defendant on January 26, 1971.

Prior to trial, the State moved to amend the indictments to charge commission of the crime on December 10, 1970, instead of December 17, 1970. The motion was denied. Defense counsel assured the court that he was fully advised that the State contended the crime charged was committed on December 10, 1970.

Defendants' pretrial motions for continuance and for change of venue were overruled.

Each defendant entered a plea of not guilty. On motion of the State, and without objection by defense counsel, the three indictments were consolidated for trial.

The State offered the testimony, respectively, of J. A. Ledbetter, High Point Police Officer; Mrs. Paul Richardson, employee of North Carolina National Bank; Gary Anderson, High Point Police Officer; Mrs. Ina Ray Gray, employee of North Carolina National Bank; J. G. Nixon, Greensboro Police Officer; and Frank Fairchild, FBI agent. Defendants offered no evidence.

The State's evidence, summarized except when quoted, is narrated below.

About 4:40 p.m. on December 10, 1970, three men entered the College Village branch of the North Carolina National Bank in High Point, where Mrs. Paul Richardson and Mrs. Ina Ray Gray worked as tellers. Everyone in the bank was ordered to get down on the floor. One of the men came behind the tellers' cages and, holding a gun at Mrs. Richardson's head, commanded her to empty into a pillowcase the money located at her window and Mrs. Gray's window. Mrs. Gray was made to get the key to the bank vault. Mrs. Richardson was dragged to the vault, all the while forced into a "stooped" position so that she could not look at the men, and made to fill the pillowcase with money from the vault. A gun was fired once. Mrs. Richardson was informed that "she was going to be a hostage." One of the men asked her if she had a car. She said, "Yes," and was made to get her keys from her teller's window. The four departed through the back door of the bank and got into Mrs. Richardson's Buick, with Mrs. Richardson at the driver's wheel.

On the lookout for "a '66 beige Buick," Officers J. A. Ledbetter and Gary Anderson sighted Mrs. Richardson's Buick stopped in a line of traffic headed north on Centennial Street because confronted by the red light at the intersection of Centennial and N. C. Highway #68. The police car pulled beside the Buick, Anderson driving and Ledbetter to his right. Ledbetter observed defendants Cox and Gary in the rear of the car and defendant Ward in the front seat on the right. Ledbetter and Anderson observed Cox sitting directly behind Mrs. Richardson with a pistol pointed to her head. The Buick turned out of the line of traffic, went through a service station yard, and headed east on #68. A quarter of a mile from the Centennial-#68 intersection, Cox crossed over from the back into the driver's seat, pushed Mrs. Richardson "over to the middle of the seat and down," and took control of the steering wheel, still holding his gun on Mrs. Richardson. Closely pursued by the police vehicle, which had its siren and emergency light on, the Buick attained speeds as high as 115 m.p.h. on the thickly-trafficked road. After four or five miles of this chase, Cox pulled to the side of the highway. The officers stopped about two car lengths behind.

Cox got out of the Buick on the driver's side, pulling Mrs. Richardson out with his left arm around her neck and his gun up to her head. The police officers got out of their vehicle and Cox began shooting at them, using Mrs. Richardson as a shield. Ledbetter and Anderson moved to the rear of their vehicle, and then Ledbetter crossed to the other side of the road. Cox came to the front of the police car, removed the keys, and shot through the windshield and over the roof. In the process of being dragged back and forth, Mrs. Richardson fell down on the ground. By this time the other two defendants had gotten out of the right-hand side of the Buick. Several more police cars were arriving on the scene. For the first time, Ledbetter and Anderson opened fire on the defendants. The defendants ran into the woods, continuing to shoot back at the police officers, and successfully eluded the officers who gave chase. A pillowcase "full of money" was found behind the driver's seat of the Buick, and more money was found in the woods nearby.

At 4:40 a.m. the next morning, December 11, 1970, when it was still dark, Officer J. G. Nixon was patroling in the vicinity of Meredith Drive in Greensboro. Three persons were beside the road and one attempted to flag him down. Nixon slammed on his brakes, turned his car around and went back. He then observed the defendants running beside a wooded area near Interstate 40. He got out, chased defendants a short distance, then went back to his patrol car to radio for help. Another car with Officers Austin and Stephenson arrived. The three officers went looking for the defendants. They followed Interstate 40, then turned into the woods and spread out. Nixon flashed on his flashlight and saw two of the defendants, lying face down. Nixon called to Austin and ordered the two to lie still. One of these defendants had a shotgun and came up on his knees. Austin hit him and grabbed the gun. Stephenson came over and grabbed the second defendant, and the two were handcuffed. Then the officers began looking for the third defendant, and he was found 20 feet north across a fence, lying face down. He got up and was handcuffed. A .22 pistol was found in the leaves, and more than $7,000.00 bound in bank straps of the North Carolina National Bank was recovered in a black skirt.

During the trial two *voir dire* hearings were held, one relating to the admissibility of certain testimony of Anderson and the other relating to the admissibility of certain testimony

of FBI Agent Frank Fairchild. Facts in connection with these hearings and the testimony of Fairchild will be stated in the opinion.

The jury found each defendant guilty of kidnapping; and, as to each, a judgment imposing a sentence of life imprisonment was pronounced.

Each defendant excepted and appealed.

*Attorney General Morgan and Deputy Attorney General Moody for the State.*

*Wallace C. Harrelson, Public Defender, and J. Dale Shepherd, Assistant Public Defender, for defendant appellants.*

BOBBITT, Chief Justice.

In their brief, after stating quite accurately that they had brought forward "numerous assignments of error," defendants assert that "the most prejudicial to the defendants were those that are brought forward from the charge."

[1] Initially, defendants stress the fact that, although the indictments charged that Mrs. Richardson was kidnapped on December 17, 1970, all the evidence tends to show this occurred on December 10, 1970. As noted in our preliminary statement, defense counsel stated that he was fully aware that the State contended the crime was committed on December 10, 1970. He now contends that the trial of this case upon an indictment charging that the offense was committed on December 17, 1970, "played havoc with any alibi that the defendants might have had." This contention is without substance since defendants were arrested during the early morning of December 11, 1970, and thereafter were in the custody of State or federal officers. Time was not of the essence of the offense and no prejudice to defendants was caused by the clerical error.

[2] Defendants' brief further asserts that the trial judge's "clearest error" was in charging "on two distinct separately indictable crimes (robbery and conspiracy) which neither of the defendants has ever been charged with . . . . " Although defendants were not charged with conspiracy or with bank robbery, the facts tending to prove defendants' participation in these two crimes constitute an integral part of the proof of the

kidnapping for which they were indicted. The three crimes are so interwoven as to constitute one transaction or series of events. "It was not necessary, in order to submit to the jury the law as to criminal conspiracy, that the bill specifically charge conspiracy, if the evidence was sufficient to warrant this view. *S. v. Triplett,* 211 N.C. 105, 189 S.E. 123." *State v. Absher,* 230 N.C. 598, 54 S.E. 2d 922 (1949). There can be no doubt as to the sufficiency of the evidence to warrant findings that the men who robbed the bank were acting in furtherance of a common purpose, design and unlawful conspiracy, and that this unlawful conspiracy included the means for escape with the fruits of the robbery. The evidence was sufficient to support the conviction of each defendant of the crime of kidnapping on the legal principle that, in the accomplishment of the purpose and design of an unlawful conspiracy, each conspirator is responsible for the acts of his co-conspirators. Moreover, the judge correctly instructed the jury with reference to the principles of aiding and abetting in the commission of a felony. Apart from conspiracy, if the jury found that defendant Cox was guilty of the crime of kidnapping as principal, there was ample evidence to support the conviction of each of the others as an aider and abettor or principal in the second degree.

Defendants noted twenty exceptions to the charge. The excerpts to which they relate constitute a major portion of the charge. Although all have been considered, further discussion of these exceptions is unnecessary. The instructions are in substantial accord with our decisions. The assignments relating thereto are without merit.

[3] Mrs. Richardson and Mrs. Gray testified in detail as to what occurred at the bank when three men entered shortly after 4:30 p.m. on Thursday, December 10, 1970. The period covered by Mrs. Gray's testimony relates to what occurred until Mrs. Richardson was taken from the bank by the three robbers. Mrs. Richardson's testimony continues until she fell to the ground during the confrontation between the robbers and the pursuing officers. Both these witnesses testified they were unable to identify any of the defendants as being one of the three bank robbers.

Defendants excepted to and assigned as error all testimony of Mrs. Richardson and of Mrs. Gray referring to what "he" or "they" (that is, the unidentified robbers) did during the

robbery of the bank and the kidnapping of Mrs. Richardson. Both women testified that the three men who robbed the bank were the men who kidnapped Mrs. Richardson. Their testimony was competent when considered in connection with other State's evidence identifying defendants as the persons who robbed the bank and kidnapped Mrs. Richardson. These assignments are without merit.

[4] Defendants excepted to and assign as error the denial of their motions for a continuance and for a change of venue. These motions were addressed to the court's discretion. *State v. Baldwin,* 276 N.C. 690, 697, 174 S.E. 2d 526, 531 (1970) ; *State v. Ray,* 274 N.C. 556, 568, 164 S.E. 2d 457, 465 (1968). Defendants having failed to show abuse of discretion or prejudice, these assignments are overruled.

[5] Defendants excepted to and assign as error the overruling of their objections to certain questions on the ground the solicitor was leading the witness. "The allowance of leading questions is a matter entirely within the discretion of the trial judge, and his rulings will not be disturbed on appeal, at least in the absence of abuse of discretion." *State v. Painter,* 265 N.C. 277, 284, 144 S.E. 2d 6, 11 (1965). Defendants having failed to show abuse of discretion or prejudice, these assignments are overruled.

[6] Defendants excepted to and assign as error the denial of their motion that the court conduct a *voir dire* hearing to determine the admissibility of Officer Ledbetter's identification testimony. Absent evidence that Ledbetter had identified defendants in some pretrial lineup or confrontation, there was no basis for any contention that his in-court identification was in any way affected by such lineup or confrontation. Hence, this assignment is overruled.

Defendants excepted to and assign as error the admission of Officer Anderson's in-court testimony that the three male occupants of the Buick were Cox, Ward and Johnson [Gary]. Defense counsel obtained permission to cross-examine Anderson in the absence of the jury concerning his identification of defendants shortly after their arrest by Greensboro police officers. In the course of this cross-examination Anderson testified that early in the morning of December 11th, when traveling toward Greensboro, he received a call from the Greensboro police; and

that, in response to this call, he went to Meredith Drive and there found defendants Cox, Ward and Johnson [Gary], each in the back seat of a police car. He testified unequivocally that he based his in-court identification of defendants on his observation of them at the time of the gunfight, when he was approximately two car lengths from them. He further testified that "[he] knew them when [he] saw them" on Meredith Drive. Immediately following this statement, Anderson was asked, "Therefore, your testimony in court today, your identification is based partly on your observation of them in Greensboro in custody of the Greensboro police department?" Anderson answered: "Yes, sir." When considered in context, we attach no significance to this answer, except that Anderson was simply saying that the men whom he had pursued a few hours before were the identical men who were now seated in the police cars.

Defendants contend that Anderson's identification of defendants as the men whom he had pursued a few hours before was made under circumstances in the nature of a lineup or one-person confrontation; that defendants were not represented by counsel when Anderson identified them on Meredith Drive; and that the circumstances under which Anderson identified defendants were so suggestive as to render Anderson's identification of defendants on Meredith Drive "unconstitutionally prejudicial."

After hearing the cross-examination of Anderson by defendants' counsel in the absence of the jury, Judge Johnston concluded that this was not a lineup or one-person confrontation within the meaning of the decisons of the Supreme Court of the United States in *United States v. Wade*, 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967), and *Gilbert v. California*, 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967). Thereupon he overruled defendants' objections to Anderson's in-court identification testimony. Defendants' assignments of error on this aspect of the case are addressed to the admission over objection of Anderson's in-court identification testimony and to the court's failure to find the facts as to the circumstances under which Anderson identified the defendants on Meredith Drive and as to whether his in-court identification testimony was tainted thereby.

[7] Defendants' assignments of error in this connection are without merit. Of course, the accuracy and credibility of Ander-

son's in-court identification testimony were proper subjects for cross-examination by defendants' counsel and for resolution by the jury. However, we are unwilling to extend the decisions bearing upon exclusion of in-court identification testimony because tainted by illegal pretrial identifications to the present factual situation. Here officers engaged in the pursuit of fleeing criminals whom they had had every opportunity to observe soon thereafter identified persons intercepted by different officers as the persons who a few hours before had eluded their pursuit and arrest. The *Wade* and *Gilbert* decisions simply do not apply to this type of identification.

We note that the testimony of Anderson, elicited on cross-examination *before the jury*, clearly indicates his independent identification of defendants. This testimony contains references to the position and actions of defendant Cox during the pursuit of the Buick and to the actions of Cox from the time the Buick stopped until the three men fled into the woods. It further refers to the actions of the two men other than Cox after the Buick stopped and the occupants got out of it.

Defendants' Assignments Nos. 14-17 relate to the testimony of FBI Agent Fairchild. He testified before the jury that, early in the morning of December 11, 1970, he went to Meredith Drive where the defendants were in the custody of the Greensboro police. He testified he then received from Officer Nixon the shotgun and [.22] pistol identified as State's Exhibits Nos. 3 and 4 and also money in excess of $7,000.00 which was enclosed by "bank straps of the North Carolina National Bank" and wrapped in a black cloth, "possibly a woman's skirt."

Then, in the absence of the jury, Fairchild was cross-examined as to the circumstances under which defendant Cox made a statement later admitted into evidence over defendants' objection. Fairchild's testimony on *voir dire* is summarized below.

Fairchild talked to Cox at the City-County Jail in High Point around 5:30 a.m. on the morning of December 11, 1970. He advised Cox of his constitutional rights as set forth in the *Miranda* decision. Cox stated that he understood his rights and signed "a rights waiver form." (Note: Fairchild testified "the rights waiver form" was not in the file he had with him but in a file at his office. The State did not produce the waiver form

nor did the defendants request that it be produced.) The conversation of Fairchild and Cox related primarily to the bank robbery.

[9] The court found as a fact that the confession made by Cox to Fairchild was made voluntarily and after he had been fully warned of his *Miranda* rights. Fairchild was then permitted to testify that during the course of their conversation defendant Cox stated, "in running through the woods after he left Mrs. Richardson's car that he lost his pistol in the woods, a 38 revolver." We find no evidence that a *.38 pistol* was used in the gun fight or that a *.38 pistol* was found in the woods. The implicating aspect of this testimony is that Cox was "running through the woods after he left Mrs. Richardson's car." Contrary to defendants' appraisal, we think the admission of this testimony constitutes their more serious assignment because of the State's failure to produce and offer in evidence at the *voir dire* hearing a written waiver by Cox in compliance with the statute then in effect and codified as G.S. 7A-457(a).

Later, Fairchild testified before the jury, over defendants' objections, that each defendant had pleaded guilty in federal court to the robbery of the College Village branch of the North Carolina National Bank on December 10, 1970, and that each was there represented by separate and independent counsel when his guilty plea was entered.

[8] Defendants base their objection to the admission of the evidence of their guilty pleas in federal court on the general rule that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. They cite *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954), which states the general rule and the established exceptions thereto. The first exception, for which numerous prior decisions are cited, is stated in these words: "1. Evidence disclosing the commission by the accused of a crime other than the one charged is admissible when the two crimes are parts of the same transaction, and by reason thereof are so connected in point of time or circumstance that one cannot be fully shown without proving the other." *Id.* at 174, 81 S.E. 2d at 366. The testimony under consideration fits this exception like a glove and illustrates its soundness.

State v. Cox and State v. Ward and State v. Gary

Apart from the in-court identification testimony of the officers, Mrs. Richardson and Mrs. Gray testified unequivocally that the men who kidnapped Mrs. Richardson were the men who robbed the bank. Thus, their testimony, considered with defendants' judicial admissions, identifies the defendants as the kidnappers. Moreover, the impact of this testimony must be considered in the light of these evidential facts: Anderson testified that, after the three men fled, a pillowcase full of money was found on the floor of the back seat of the Buick directly behind the driver's seat, and later some money was found in the woods into which the three men had fled. Officer Nixon testified that, on the occasion when the three defendants were apprehended in the woods in the Greensboro area, he, along with other Greensboro officers and at least one FBI agent, found in excess of $7,000.00 in a lady's black skirt, sewed up at one end, which money had North Carolina National Bank wrappers on it.

[9] When the mass of evidence pointing to the guilt of the defendants is considered, we hold that errors, if any, in the admission of testimony, were harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969); *Schneble v. Florida,* 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972); *State v. Doss,* 279 N.C. 413, 423-24, 183 S.E. 2d 671, 677 (1971); *State v. Jones,* 280 N.C. 322, 340, 185 S.E. 2d 858, 869 (1972). It appears beyond a reasonable doubt that these defendants would have been convicted of the crime charged if the evidence challenged as erroneous were not in the case. Fairchild's testimony as to Cox's statement concerning his flight from Mrs. Richardson's car was of negligible probative value when considered in the light of Cox's plea of guilty of the bank robbery.

The assignments of error not discussed specifically herein have been considered. They do not disclose prejudicial error or merit discussion.

Defendants having failed to show prejudicial error, the verdict and judgment of the court below will not be disturbed.

No error.