STATE OF NORTH CAROLINA v. RANDOLPH JENNINGS, BRADFORD MIZELL LILLEY, AND LARRY MEDLEY

No. 7218SC626

(Filed 25 October 1972)

1. Criminal Law § 84; Searches and Seizures § 1— trespassers — standing to object to search

Defendants who were wrongfully and unlawfully present upon leased premises after the service of Execution in Summary Ejectment upon lessee as well as upon them at the demised premises had no standing to object to a search of the premises subsequent to their eviction and arrest, and the officers' warrantless search was lawfully conducted; hence, rifles, ammunition, papers and petitions seized as a result of the search were admissible in a prosecution for felonious assault upon an officer.

2. Assault and Battery § 13; Criminal Law § 33— admissibility of evidence of defendants' membership in Black Panthers

Evidence of a Black Panther magazine and "Daily Reports" (time sheets) signed by defendants discovered in a search of leased premises held by defendants at the time of their arrest was admissible in a prosecution for felonious assault on a police officer to show motive, intent and a purposeful common design to commit an unlawful assault with intent to kill, and to inflict serious injury.

3. Assault and Battery § 16— failure to submit question of guilt of lesser degree of crime — no error

In a prosecution for felonious assault upon an officer with a deadly weapon with intent to kill where all the evidence presented showed a shooting with a deadly weapon with an intent to kill and none of the evidence showed a lack of such intent, the trial court did not err in failing to submit to the jury the lesser offense of assault with a deadly weapon (without intent to kill), inflicting serious injury.

4. **Assault and Battery §§ 5, 15— felonious assault trial — charge on conspiracy proper**

    The trial court properly charged the jury on the elements of conspiracy and aiding and abetting, though a criminal conspiracy was not charged in the bills of indictment, where there was evidence to support such charge.

5. **Assault and Battery § 15; Criminal Law § 111— failure to read indictments to jury**

    The failure of the trial judge to read the indictments of each defendant in full during his instructions to the jury did not constitute prejudicial error.

APPEAL by defendants from *Copeland, Judge,* 24 January 1972 Special Session of Superior Court held in GUILFORD County.

Defendants were each indicted, tried and convicted upon identical bills of indictment, proper in form, for felonious assault upon one Lieutenant Shaw Cook with a deadly weapon with intent to kill and inflicting serious injury, a violation of G.S. 14-32(a). Defendants were also indicted and tried upon bills of indictment charging them with felonious assaults upon Police Officers T. S. Bryant and G. S. McDowell, but were acquitted of those charges.

The evidence for the State tended to show the following facts. On 10 February 1971, at about 6:30 a.m., several law enforcement officers from the Guilford County Sheriff's Department and the High Point Police Department went to the vicinity of 612 Hulda Street in the City of High Point, there to complete the service upon the occupants of 612 Hulda Street of an Execution in Summary Ejectment issued by a Deputy Clerk of the Superior Court of Guilford County on 4 February 1971 in the case of *Mendenhall-Moore Realtors, Agt., Judge Byron Haworth, Owner against Forrest White.* Chief of Police Laurie Pritchett was in command of the High Point Police detachment, and the police were accompanying the sheriff's deputies for the purpose of aiding the deputies in the service of the Execution in Summary Ejectment.

Among the number of police officers who had proceeded to the vicinity of 612 Hulda Street was Lieutenant Shaw Cook who commanded a squad of some three or four police officers and who had taken a position of cover behind a tree facing the front of the premises at 612 Hulda Street, pursuant to a plan

of action promulgated by the Chief of Police earlier on the morning of 10 February 1971.

At about 6:45 a.m., Chief of Police Pritchett, Deputy Sheriff Larry Linthicum and Lieutenant Arrington of the Sheriff's Department went to the front door of the premises at 612 Hulda Street, whereupon Deputy Linthicum and Lieutenant Arrington attempted to complete the service of the Execution in Summary Ejectment and requested the occupants of the premises to leave. Upon being informed that the officers were from the Sheriff's Department and were there to complete the service of the eviction order, a male voice inside the house replied that "we don't have nothing to say to you." Deputy Sheriff Linthicum had previously served the Execution in Summary Ejectment on Forrest White, the lessee, on 5 February 1971, informing him in writing that the Sheriff would, on 10 February 1971, at 7:00 a.m. remove the goods and chattels of the defendant, Forrest White, from plaintiff's premises at 612 Hulda Street if the premises had not been vacated. White was not in the building at the time of the battle between the occupants and the police. The three officers left the front porch of the premises after the occupants refused to come out, and another officer addressed the occupants of the premises at 612 Hulda Street over a public address system, informing the occupants as to the summary ejectment order and giving them a period of time in which to leave the building. After the period of time had expired, some ten to fifteen minutes, the police fired two tear gas projectiles toward the building, but neither shot entered the building. Then a third tear gas projectile was fired which did enter the house through one of the windows, and at about the same time, a shot from a 30.06 rifle was fired from inside the premises, hitting Lieutenant Shaw Cook in his chest, causing serious injuries.

After Lieutenant Cook was wounded, the police and the occupants at 612 Hulda Street traded volleys of fire, approximately two minutes in duration, during which other officers were struck by bullets but fortuitously not wounded because they were wearing "flak jackets." Lieutenant Cook was not wearing a "flak jacket." Then a voice from the building announced, "We are coming out," at which time the police ceased fire. The three defendants (and one other person tried with the defendants and acquitted) walked from the house, were placed under arrest, handcuffed, and were immediately removed

from the area to the Guilford County-High Point jail by two deputies.

The State's evidence also tended to show the following: That Lieutenant Shaw Cook was shot with a 30.06 caliber rifle slug; that the police at 612 Hulda Street had only one 30.06 caliber rifle and that most of the officers had been armed with shotguns; that the one 30.06 rifle was used by a "sniper officer" who was located outside of the premises and next to the Chief of Police; that the judgment that had been entered in the eject-ment proceedings directed the Sheriff of Guilford County to remove the defendant Forrest White from and put the plaintiff in possession of the premises; that the plaintiff in the eject-ment proceeding had not received possession of the premises prior to this occasion; that the defendants in this case were in the house and refused to come out as demanded by the sheriff's deputy; that a "primer residue" test was conducted on the defendants and that as to each of the convicted defend-ants, the test showed a positive reading of primer residue on his hands, and that a person would get primer residue on his hands if he were close to a weapon which had been fired; and that the owner of a sporting goods store had sold a box of 30.06 caliber and a box of 30.30 caliber shells to one Bradford Mizell Lilley on 2 February 1971.

The State's evidence further tended to show that immedi-ately after the defendants came out of the house and were placed under arrest, one Officer Pike entered the house and conducted a quick search of the premises and determined that there were no other persons present therein. Chief Pritchett then ordered a detective captain to conduct an investigation into the shooting of the officers, and pursuant thereto, the captain and his party entered the premises at 612 Hulda Street a few minutes after the shooting stopped and conducted a search for the instruments of, and evidence pertaining to, the crime. The search resulted in the location of sandbagged gun positions at the front upper and lower windows of the house, two rifles and a shotgun, one of which was a 30.06 caliber rifle, bandoliers of ammunition, instructions for the preparation of an anti-tear gas mixture ("The People's Antidote for Tear Gas"), two spent cartridges from the 30.06 rifle, a copy of the eviction notice previously served on Forrest White, reports or writings with the names of the defendants on them, a copy of a "Black Panther" maga-

zine, a blank form of a petition entitled, "WE WILL LET THE PEOPLE DECIDE," which read as follows:

"At this time the power structure of High Point has moved behind closed doors in cahoots with Menden Hall Realty (sic) to evict the members of the Black Community Information Center who have done nothing more than served the people since they've been here.

On Dec. 25 there was an open house held at 612 Hulda St. The people from the community gave tremendous support to the center. On the 28th the following Monday we received an eviction notice stating that the realty wanted the house by Jan. 28th, they wouldn't accept any money just the house. After members were summoned to court the judge ruled that we would have to move because we were given 30 days notice.

The National Committee to Combat Fascism in Winston-Salem ad (sic) the Community Center in High Point are putting it before the people. The people will decide whether we move or not.

IF YOU WANT US TO STAY IN THIS COMMUNITY SIGN YOUR NAME AND ADDRESS BELOW"

Three copies of this petition were taken off of the person of the defendant Larry Medley, two of which had a total of 31 names signed thereon.

Other evidence tended to show that fingerprints from defendant Jennings were found on a cartridge box secured in the aforementioned search, and that the bullet removed from the body of Lieutenant Shaw Cook was a 30.06 caliber bullet and was fired by the 30.06 rifle identified as having been found in the house at 612 Hulda Street during the search.

The defendants offered no evidence, and from the judgment of imprisonment as to each for not less than seven nor more than ten years, each defendant appealed to the Court of Appeals.

*Attorney General Morgan, Assistant Attorney General Magner and Associate Attorney Haskell for the State.*

*Public Defender, Eighteenth Judicial District, Wallace C. Harrelson and Assistant Public Defender Dale Shepherd for defendants appellants.*

MALLARD, Chief Judge.

[1]   Defendants assign as error the conclusions of the trial court as a matter of law, based upon findings of fact, made on a voir dire hearing that no search warrant was necessary for the search of the premises at 612 Hulda Street and that the items seized pursuant to the search were admissible in evidence. Defendants rely on cases which hold that a search incident to an arrest is not permissible beyond the person or the immediate surrounding area of the one searched. *Chimel v. California,* 395 U.S. 752, 23 L.Ed. 2d 685, 89 S.Ct. 2034 (1969). However, defendants have failed to address themselves to the more pertinent issue, which is, whether the defendants have standing to object to the search and seizure.

The 4th Amendment excludes from its protection those who are not legitimately on the premises, and such persons may not object to a search thereof. The defendants had not leased the premises. Assuming that Forrest White, the lessee, may have invited them to be on the premises, *his* legal right to the premises, and therefore *theirs,* if any, had terminated when the execution in summary ejectment was served. From the petitions found on the person of one of the defendants, it is clear that they had knowingly and wilfully decided to unlawfully keep possession of the premises in open defiance of the duly constituted authorities. See *State v. Eppley,* 14 N.C. App. 314, 188 S.E. 2d 758 (1972), *cert. granted,* 281 N.C. 625, 190 S.E. 2d 468 (1972). On this basis, the defendants, who had become wrongfully present upon the premises, have no standing to object to the search of the premises at 612 Hulda Street after they were lawfully evicted. Moreover, there was uncontroverted evidence that the sheriff's deputies and police officers assisting them at the scene had in their possession and were in the process of completing a valid Execution in Summary Ejectment issued in the case of Mendenhall-Moore Realtors, Agt., Judge Byron Haworth, Owner against Forrest White. This Execution in Summary Ejectment required the officers to dispossess the lessee and place the plaintiff in the ejectment case in possession.

These defendants had no legitimate interest in the premises, and as such, have no standing to object to a search, after they were lawfully evicted, of the premises they had wrongfully withheld from the owner. *State v. Eppley, supra;* Annot., 78 A.L.R. 2d 246, § 8; see also *Jones v. U.S.,* 362 U.S. 257, 4 L.Ed.

2d 697, 80 S.Ct. 725, 78 A.L.R. 2d 233 (1960); *Mancusi v. DeForte,* 392 U.S. 364, 20 L.Ed. 2d 1154, 88 S.Ct. 2120 (1968); *U. S. v. Croft,* 429 F. 2d 884 (10th Cir. 1970); and *U. S. v. Paroutian,* 299 F. 2d 486 (2d Cir. 1962).

Furthermore, the police officers and sheriff's deputies were lawfully authorized to enter the premises and to remove the goods and chattels of the defendant pursuant to the Execution in Summary Ejectment, the validity of which is not challenged by these defendants.

Chapter 838 of the Session Laws of 1953, as amended by Chapter 256 of the Session Laws of 1957, applicable only to Guilford County, provides:

> "Sec. 2. Before a Sheriff, constable or other lawful officer shall remove the goods and chattels of a defendant from the premises of plaintiff when required and commanded to do so by an execution or order in his hands, said officer shall give the defendant at least forty-eight hours personal notice of the exact time that such removal will be made . . . .

> Sec. 3. . . . (I) n the event the defendant is not present at or near the premises at the time set for the removal of the goods and chattels . . . ; then said officer without any liability on his part may deliver said goods and chattels to any storage warehouse in his county for storage."

Deputy Sheriff Linthicum testified that on 5 February 1971, more than 48 hours prior to the removal of the goods from 612 Hulda Street, he personally served two copies of the Execution in Summary Ejectment on Forrest White, the lessee of the demised premises.

We are of the opinion and so hold that the defendants were wrongfully and unlawfully present upon the premises at 612 Hulda Street after the service of the Execution in Summary Ejectment upon Forrest White, as well as upon them at the demised premises on 10 February 1971, and had no standing to object to the search of the premises subsequent to their eviction and arrest. In addition, we further hold that the search of the demised premises, 612 Hulda Street, was lawfully conducted, and all goods and chattels lawfully removed by the officers and sheriff's deputies present on 10 February 1971

pursuant to the authority granted them by virtue of the Execution in Summary Ejectment and by Session Laws 1953, Chapter 838, as amended by Session Laws 1957, Chapter 256.

[2] Defendants assign as error the admission into evidence of certain items on the grounds that the evidence was irrelevant and prejudicial. The State offered into evidence copies of a Black Panther magazine discovered in the search of the premises at 612 Hulda Street and copies of "Daily Reports" signed by defendants, and showing their activities on particular days, in the manner of a time sheet. Defendants contend that the admission of these items in evidence was prejudicial, relying on *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971). In Lynch, defendant was charged with arson and the question of a conspiracy was not involved. In this case, however, there was considerable evidence of a conspiracy to openly defy the duly constituted authorities. That the defendants may have been, or were, members of the Black Panther organization and that they chose to resist with the use of firearms their eviction from a house that had been attached to the outside of it a sign reading, "Death to the Fascist Pigs," is evidence which is competent to show motive, intent and a purposeful, common design to commit an unlawful assault with intent to kill, and to inflict serious injury. See *State v. Hairston,* 280 N.C. 220, 185 S.E. 2d 633 (1971). Evidence of motive is competent where the doing of the act is in dispute. Stansbury, N.C. Evidence 2d, § 83.

The sign, which was attached to the outside of the house and was large enough to extend across the two upstairs windows, bore pictures of two black panthers, or cats, and read as follows:

"From each according to his ability, to each according to his needs.

National Committee to Combat Fascism in America

COMMUNITY CENTER

Legal Aid Here
Free All Political
Prisoners ! ! !

Community Control of police for a people's community Socialism

— Free breakfast program
— Free clothing program
— Liberation school to teach our youth

— Community political education classes
— Free daycare center

Power to the people! ! ! Death to the Fascist Pigs

On organizing bureau of the BLACK PANTHER PARTY"

Under these and the other circumstances of this case, we are of the opinion and so hold that the Black Panther magazine and the "Daily Reports" had probative value and were admissible in evidence.

Defendants have a combined total of one hundred and thirty-nine assignments of error based upon three hundred and four exceptions. Many of these assignments of error are to the admission of evidence. We have considered all of these assignments of error and are of the opinion that the evidence excepted to was either competent or harmless beyond a reasonable doubt under the circumstances of this case and therefore not prejudicial.

[3] Defendants assign as error the failure of the trial judge to submit to the jury certain lesser offenses for determination as to the defendants' guilt or innocence thereof, and the failure of the judge to charge the jury on the elements of those offenses. Defendants urge that the recent decision of the North Carolina Supreme Court in *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972), requires our reversal of the judgments of guilty. In Thacker, defendant was allowed to use a telephone in a private office of an FCX store. Immediately after using the phone, defendant assaulted two persons with a 6-inch blade knife, seriously wounding both persons. Defendant was charged with a violation of G.S. 14-32(a) [1969], and the trial court limited the jury to one of four verdicts: guilty as charged; guilty of assault inflicting serious injury; guilty of assault with a deadly weapon; or not guilty. Defendant contended that the court should have submitted to the jury a lesser degree of the crime charged, "to-wit, assault with a firearm or other deadly weapon *per se* inflicting serious injury, a five year felony under G.S. 14-32(b) (1969)." The Supreme Court stated that "(i)t suffices to say that the crime condemned by G.S. 14-32(b) is a lesser degree of the offense defined in G.S. 14-32(a), and a defendant is entitled to have the different permissible verdicts *arising on the evidence* presented to the jury under proper instructions."

The issue presented, therefore, is whether there was evidence present upon which the lesser included offense of assault with a deadly weapon (without intent to kill), inflicting serious injury, could properly have been submitted to the jury. Defendants presented no evidence. The State's evidence tended to show that all three of the defendants were inside the house at 612 Hulda Street at the time that Lieutenant Shaw Cook was seriously wounded by a 30.06 caliber rifle bullet fired from that house; that defendant Lilley had purchased 30.06 and 30.30 caliber rifle bullets and that 30.30 and 30.06 caliber rifle bullets were found inside the house at 612 Hulda Street; that a 30.06 caliber rifle was found at a gun position inside the house; that all three defendants had traces of primer residue on their hands, indicating that they had fired or had been close to a gun that was fired; that there were other gun positions inside the premises of 612 Hulda Street, all elaborately constructed with sandbags and chicken wire; that a copy of the Execution in Summary Ejectment was found in a desk drawer inside the house, which would indicate that defendants knew, or should have known, that the lessee was to be evicted at 7:00 a.m. on the morning of 10 February 1971 if the lessee had not vacated the premises as ordered by the court; that one of the defendants had circulated a petition stating that "The people will decide whether we move or not"; that defendants were officially notified of the Execution in Summary Ejectment at the door of 612 Hulda Street on the morning of 10 February 1971 but refused to comply with the order to vacate the premises; and that defendants traded volleys of fire with the police officers present, hitting but not wounding two other officers, after tear gas had been introduced into the house by the officers in their efforts to enforce the court order.

All the evidence presented tends to show that defendants wielded a deadly weapon; that they inflicted serious injuries to Lieutenant Shaw Cook; and that they intended to defy the order of the court and the officers of the law present at the premises of 612 Hulda Street under lawful authority, and intended to kill Lieutenant Cook and other officers in the course of their defiance. "Death to the Fascist Pigs" was the slogan and sign under which these defendants were actually shooting and operating. It is a common knowledge that police officers are frequently referred to in a derogatory manner by certain elements in our society as "pigs." In the Thacker case, supra,

the evidence *permitted* an inference of an intent to kill because of the "viciousness of the assault and the deadly character of the weapon used." In this case, however, the evidence of an intent to kill is clear and compelling. One who fires a 30.06 rifle at the middle of the chest of another person who is standing within shooting range has the intent to kill. No other inference is logically permissible. All the evidence presented shows a shooting with a deadly weapon *with an intent to kill* and none of the evidence shows the lack of such intent. For this reason, it was not error for the court to have failed to have submitted to the jury the lesser offense described in G.S. 14-32(b).

[4] Defendants assign as error the charge to the jury of the trial judge concerning the elements of conspiracy and aiding and abetting, where a criminal conspiracy was not charged in the bills of indictment. Defendants conceded in their brief that in North Carolina the court may charge on conspiracy where there is evidence to support the charge, even if conspiracy is not alleged in the bill of indictment. *State v. Cox,* 281 N.C. 275, 188 S.E. 2d 356 (1972). Defendants contend, however, that *State v. Cox, supra,* does not contain a correct statement of the law, and that for that reason, this court is not bound to follow the principles set forth in that decision. In the alternative, the defendants contend that even if the charges were correctly given under the authority of *State v. Cox, supra,* that there was insufficient evidence to support the charges as to conspiracy and aiding and abetting. We do not agree with either of defendants' contentions.

[5] Defendants assign as error the failure of the trial judge to read the indictments of each defendant in full during his instructions to the jury. At the opening of the charge, the court read to the jury the three indictments charging defendant Medley with felonious assaults upon Officers Cook, Bryant and McDowell. Thereafter, as to defendants Jennings and Lilley, the court merely instructed the jury that their indictments charged them with the identical offenses as were charged against defendant Medley, and the court did not read those indictments due to their being repetitious. In 3 Strong, N.C. Index 2d, Criminal Law, § 111, we find the following statement:

"There are no stereotyped forms of instructions. The trial judge has wide discretion in presenting the issues to

the jury, so long as he charges the applicable principles of law correctly, and states the evidence plainly and fairly . . . . "

In 53 Am. Jur., Trial, § 639, it is stated that:

"In a criminal prosecution, it is the duty of the court to give the law as to the offense charged and the elements thereof. * * * Instructions need not be couched in the same form or phraseology as the indictment or information . . . . "

The failure to read each of the nine bills of indictment involved herein was not error.

Defendants assign other errors to the charge of the court which we have carefully reviewed, but we find no prejudicial error therein.

Defendants' assignment of error that the court erred in failing to allow their motions for judgment as of nonsuit is without merit. The trial judge properly submitted the case to the jury.

We have studied and reviewed all of defendants' voluminous assignments of error. As to some of the assignments, the record may reveal technical procedural error. However, we are of the opinion that these are not sufficiently prejudicial to entitle defendants to a new trial, nor do we feel that upon a new trial a different result would obtain. On this record it appears, and we so hold, that the defendants have had a fair trial, free from prejudicial error.

Affirmed.

Judges CAMPBELL and BRITT concur.