The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Antonio R. HOWARD, Defendant–Appellant.

No. 05CA2297.

Colorado Court of Appeals, Div. V.

May 1, 2008.

Certiorari Denied Oct. 6, 2008.

§ 24-51-1105, C.R.S.2007.

John W. Suthers, Attorney General, Corina Gerety, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kimberly K. Caster, Centennial, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Antonio R. Howard, appeals a judgment of conviction entered upon a jury verdict finding him guilty of first degree aggravated motor vehicle theft, criminal mischief, obstructing a peace officer, second degree criminal trespass, reckless driving, and leaving the scene of an accident involving property damage. We affirm.

The charges were based on events that occurred on July 1, 2003. Earlier that day, a vehicle was reported stolen. A plainclothes police officer in an unmarked car (plain-

clothes officer) spotted the stolen vehicle that evening. He confirmed that it was the stolen vehicle, pulled alongside, and observed the driver at close range for several seconds as he was aware he might later be called upon to identify him. The driver was wearing a "do rag" (a tight fitting cloth or full skull cap used to cover the hair) and a red shirt. The plainclothes officer then requested assistance from marked police vehicles in the area, and continued to follow the stolen vehicle.

A uniformed officer in a marked police vehicle (uniformed officer) passed the plainclothes officer and began following the stolen vehicle as the driver took evasive action by turning into an alley at a high rate of speed, exiting that alley without appreciably slowing, and colliding with another vehicle. The accident seriously damaged the stolen vehicle, the other vehicle, and improvements on adjacent real property.

The driver of the stolen vehicle ran from the accident scene chased by the other driver. The uniformed officer arrived at the accident scene and was told by witnesses which direction the driver had fled. The plainclothes officer arrived and began pursuing an individual he saw running down an alley.

Many more officers including a canine unit arrived and began a search. A person believed to be the driver was spotted a number of times by several officers and others, including one who reported that he was in some bushes where a "do rag" and red shirt were subsequently found. Defendant was found shirtless in the vicinity, hiding in a residential garage in which he was cornered by a police dog and subdued with pepper spray. Several minutes later, the plainclothes officer arrived, identified defendant as the driver of the stolen vehicle, and placed him in handcuffs.

Defendant was tried and convicted as described above. This appeal followed.

## I.

 Defendant first argues that the trial court erred in denying his motion to suppress his identification by the plainclothes officer. More particularly, he contends that his con-stitutional right to due process was violated because the identification was unnecessarily suggestive and thus unreliable. He argues that the plainclothes officer did not identify him as part of a criminal investigation, but rather did so as a witness to the ongoing criminal act, in an unnecessarily suggestive one-on-one identification. We disagree.

 When reviewing a trial court's denial of a motion to suppress, we defer to its findings of fact, but review its conclusions of law de novo. *People v. Garcia*, 11 P.3d 449, 453 (Colo.2000); *People v. Romero*, 953 P.2d 550, 555 (Colo.1998). "The ultimate question as to the constitutionality of pretrial identification procedures is a mixed question of law and fact." *Bernal v. People*, 44 P.3d 184, 190 (Colo.2002) (citing *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982)). "Thus, while the trial court's findings of historical fact are entitled to deference, an appellate court may give different weight to those facts and may reach a different conclusion in light of the legal standard." *Id.* (citing *Sumner*, 455 U.S. at 597, 102 S.Ct. at 1307).

At the hearing on defendant's motion to suppress, the trial court heard testimony from the plainclothes officer and argument from both sides. The trial court found that the plainclothes officer "was able to get a good, clear look at the driver of the vehicle" at the time of the initial contact and "was fully involved in the entire investigation and the apprehension of the defendant." The trial court further found that the identification was part of an "ongoing situation ... that occurred rapidly" and concluded that the analysis for show-up identifications contained in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), did not apply, and that even if it did, defendant's due process rights were not violated because of the totality of the circumstances.

Defendant has cited no Colorado cases, nor could we find any, where a court has considered a police officer's identification following the pursuit and capture of a fleeing or just-apprehended suspect. There appear to be two main approaches to the issue followed by other jurisdictions.

The first approach distinguishes an identification by an officer while investigating from a show-up or line-up identification by a lay person who, typically, recently witnessed or was the victim of a criminal episode. In *State v. Cox*, 281 N.C. 275, 188 S.E.2d 356 (1972), three men robbed a bank, took one of the tellers as a hostage, and left in the hostage's car. *Id.* at 358. Two officers later encountered the hostage's car stopped at a red light with the hostage driving and three male passengers. *Id.* The hostage's car turned right through a service station and proceeded away at a high rate of speed with the officers in pursuit. *Id.* One of the men in the back seat moved into the front seat and took over driving, stopped, exited the driver's side with the hostage as a shield, and confronted the officers with a firearm. *Id.* The other two men, armed with hand guns, also exited the hostage's car and joined the confrontation. *Id.* When the officers and the defendants were approximately two car-lengths apart, shots were fired, and the defendants disappeared into an adjacent forest. *Id.*

The next day, an officer from a nearby town saw three men alongside the highway and stopped to investigate. *Id.* at 359. The men ran into the woods and were captured. *Id.* The officers who had encountered the hostage's car were called to the scene and identified the defendants while they were seated in the back seat of a patrol car. *Id.* The defendants filed a motion to suppress the in-court identification by the two officers under *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). *Id.* The North Carolina Supreme Court rejected that argument:

> Of course, the accuracy and credibility of [the officers'] in-court identification testimony were proper subjects for cross-examination by defendants' counsel and for resolution by the jury. However, we are unwilling to extend the decisions bearing upon exclusion of in-court identification testimony because [it was] tainted by illegal pretrial identifications to the present factual situation. Here officers engaged in the pursuit of fleeing criminals whom they had had every opportunity to observe soon thereafter identified persons intercepted by different officers as the persons who a few hours before had eluded their pursuit and arrest. The *Wade* and *Gilbert* decisions simply do not apply to this type of identification.

*Cox*, 188 S.E.2d at 361.

In *People v. Wharton*, 74 N.Y.2d 921, 550 N.Y.S.2d 260, 549 N.E.2d 462 (1989), the rationale is more complete. There, the officer purchased drugs from the defendant, face-to-face, and described the defendant to undercover officers who arrested him. *Id.* at 462–63. Shortly thereafter, the officer drove by the scene of the arrest, identified the defendant, and then later identified him through a window at the police station. *Id.* The defendant moved to suppress the identification, and the trial court denied the motion without a hearing. *Id.* The appeals court affirmed, stating:

> We conclude that the trial court did not err by denying defendant's motion for a *Wade* hearing. It is not disputed that the identification was made by a trained undercover officer who observed defendant during the face-to-face drug transaction knowing defendant would shortly be arrested. Thus, there is evidence in the record to support the determination of the courts below that the officer's observation of defendant at the station house approximately three hours later was not of a kind ordinarily burdened or compromised by forbidden suggestiveness, warranting a lineup procedure or *Wade* hearing. The viewing by this trained undercover narcotics officer occurred at a place and time sufficiently connected and contemporaneous to the arrest itself as to constitute the ordinary and proper completion of an integral police procedure. Additionally, as we have observed in this kind of situation, it lent assurance that an innocent person was not being detained by reason of a mistaken arrest. The undercover officer's participation in the criminal apprehension operation at issue was planned, and he was experienced and expected to observe carefully the defendant for purposes of later

identification and for completion of his official duties.

*Id.* (citations omitted); *see also United States v. Brown,* 700 A.2d 760, 763 (D.C.1997) (police officers are "less vulnerable to a claim of [suggestibility] than ... lay witnesses would be in similar circumstances, since police witnesses probably would be less likely than laypersons to infer suggested guilt simply from a show[-]up on police premises"); *People v. Morales,* 37 N.Y.2d 262, 372 N.Y.S.2d 25, 333 N.E.2d 339, 344 (1975).

The second approach, which is urged upon us by defendant, applies the two-part analysis of *Neil,* which requires that a defendant must first show that the identification procedure employed was impermissibly and unconstitutionally suggestive. *Neil,* 409 U.S. at 199–200, 93 S.Ct. at 382. If that is shown, then the prosecution must prove that the identification is, nevertheless, reliable under the totality of the circumstances. *Id.* The factors to be analyzed when deciding the likelihood of misidentification include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.*

We are persuaded by the first approach. A police officer: (1) is a trained observer; (2) has a primary interest in capturing the right person to protect the public, his or her integrity, and that of the prosecution; (3) can be expected to be relatively calm, deliberate, and less suggestible when compared to a victim of, or witness to, a recent crime; (4) is familiar with the identification procedure and is unlikely to be startled or distracted by the circumstances or the scene.

Thus, we conclude the trial court properly denied the motion to suppress the plainclothes officer's one-on-one show-up identification.

## II.

▮ Defendant next argues that there was insufficient evidence upon which to convict him of criminal mischief. He asserts that the prosecution did not prove the mental state, knowingly, required for conviction on that charge under section 18–4–501(1), C.R.S. 2007. Instead, defendant contends that the prosecution only presented evidence of the culpable mental state of recklessness. We review the trial court's ruling de novo, *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005), and disagree.

When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt.

*People v. McIntier,* 134 P.3d 467, 471 (Colo. App.2005) (citing *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999); *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988)). The prosecution is given the benefit of every reasonable inference that could be drawn from the evidence. *Id.* Credibility determinations, as well as the weight to be given to the evidence, lie with the fact finder. *Id.* Also, the fact finder must resolve issues of inconsistency as to testimony and other evidence. *Id.* An appellate court cannot sit as a thirteenth juror and set aside a verdict simply because it could have reached a different conclusion. *Id.* at 471–72.

According to section 18–4–501(1), a person commits criminal mischief when he or she "knowingly damages the real or personal property of one or more other persons." As pertinent here, the mental state of knowingly requires that the defendant be aware that his conduct is practically certain to cause the result. § 18–1–501(6), C.R.S.2007. According to section 42–4–1401(1), C.R.S.2007, a person commits reckless driving when he or she "drives any motor vehicle ... in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property."

▮ Here, evidence was presented that defendant was driving a stolen car and was

being chased by a marked police vehicle. He attempted evasive maneuvers, which included traveling at a high rate of speed while turning into an alley, failing to yield to traffic when exiting the alley, and causing and being involved in a traffic accident that damaged two vehicles and real property. Considering all the evidence and testimony in the light most favorable to the prosecution, we conclude that there was sufficient evidence for a jury to find that defendant acted knowingly or willfully with respect to his conduct.

 "A finding of knowing or willful conduct is sufficient to establish the culpable mental state of recklessness." *See People v. Yanaga*, 635 P.2d 925, 926 (Colo.App.1981). Also, different culpable mental states may exist simultaneously. *People v. Noble*, 635 P.2d 203, 212–13 (Colo.1981). Therefore, it was possible, given the evidence, that the jury could have found that defendant acted knowingly while driving recklessly.

The judgment is affirmed.

Judge GRAHAM and Judge J. JONES concur.