STATE OF NORTH CAROLINA v. KENNIE HARRELL

No. 18

(Filed 12 April 1972)

1. Constitutional Law § 30— right to speedy trial — purpose

The threefold purpose of the constitutional guaranty of a speedy trial is to protect the accused against prolonged imprisonment, relieve him of the anxiety and public suspicion attendant upon an untried accusation of crime, and prevent him from being exposed to trial after the lapse of so great a time that the means of proving his innocence may have been lost.

2. Constitutional Law § 30— speedy trial

The word "speedy" cannot be defined in specific terms of days, months or years, so the question whether a defendant has been denied a speedy trial must be answered in light of the facts in a particular case.

State v. Harrell

**3. Constitutional Law § 30— speedy trial — reasonableness of delay**

Four factors should be considered in determining the reasonableness of a delay: the length of the delay, the reason for the delay, prejudice to the defendant, and waiver by the defendant.

**4. Constitutional Law § 30— speedy trial — appeal from·recorder's court — trial de novo in superior court — delay**

Defendant was not denied his Sixth Amendment right to a speedy trial by the delay between his appeal from the recorder's court on 24 September 1968 and his trial *de novo* in the superior court in June 1971, where defendant was serving a sentence for an unrelated offense for nine months after his appeal, defendant thereafter failed to appear for trial on two occasions when the case was called, defendant has not shown that the delay in bringing him to trial was due to neglect or willfulness of the prosecution or even that it was for the convenience of the State, and defendant has not shown that the delay prejudiced his cause or created a reasonable possibility of prejudice to him.

**5. Criminal Law § 138— trial de novo in superior court — increased punishment**

Upon appeal from an inferior court for a trial *de novo* in the superior court, the superior court may impose punishment in excess of that imposed in the inferior court provided the punishment imposed does not exceed the statutory maximum. Amendments VI and XIV, U. S. Constitution; Article I, §§ 19 and 24, N. C. Constitution.

Chief Justice BOBBITT dissenting in part.

Justices HIGGINS and SHARP join in dissenting opinion.

DEFENDANT appeals from decision of the Court of Appeals upholding judgments of *Bowman, S.J.,* 21 June 1971 Criminal Session, CRAVEN Superior Court.

Defendant was charged in separate warrants with committing an assault with a deadly weapon upon Grace Harrell, his wife, Faye Mitchell, his wife's sister, and Mary Mercer, his mother-in-law.

The State's evidence tends to show that on 1 July 1968 the three prosecuting witnesses were sitting on Mary Mercer's porch when defendant drove up, jumped out of his car, held a shotgun on the trio and told them not to move or he would kill them. Faye Mitchell ran to the back of the house to call the police. Mary Mercer screamed for help. The defendant attempted to force Grace Harrell to get in his car and bring their children with her. He repeatedly told the women he would kill them if they moved and threatened to blow Mary Mercer's "god

State v. Harrell

damn head off." Defendant and his wife were separated at the time. When defendant heard that the officers were coming, "he hauled off and fired the gun," the shot striking the house within a few feet of Grace Harrell and her mother.

Defendant testified as a witness in his own behalf and stated that Faye Mitchell fired a pistol at him three or four times and that he reached for his shotgun but the boy, who was with him in his car, picked up the gun and shot at the porch and ran away. Defendant denied shooting at, pointing a gun at, or threatening the women.

On 24 September 1968 in the Craven County Recorder's Court defendant was convicted of an assault with a deadly weapon in each case and given six months in each case to run concurrently. He appealed to the Superior Court of Craven County where, on 21 June 1971, he was convicted by a jury of an assault with a deadly weapon in each case. The court thereupon sentenced him to eighteen to twenty-four months in each case to run consecutively. Defendant appealed to the Court of Appeals, and that tribunal found no error, 13 N.C. App. 243. Defendant thereupon appealed to the Supreme Court allegedly as of right contending that a substantial constitutional question is involved. The State moves to dismiss the appeal for lack of a substantial constitutional question.

*John H. Harmon, attorney for defendant appellant.*

*Robert Morgan, Attorney General; Christine A. Witcover, Associate Attorney; James F. Bullock, Deputy Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

We have decided to consider the appeal on its merits. Hence the State's motion to dismiss the appeal is denied.

Defendant first contends that he was denied a speedy trial in the Superior Court of Craven County and that his motion to dismiss these actions on that ground should have been allowed.

The record is not clear with respect to events occurring between 24 September 1968 when defendant appealed from the recorder's court and June 1971 when he was tried *de novo* in the Superior Court of Craven County. In September 1968 de-

fendant was apparently serving a prison term for some unrelated offense. The colloquy among the judge, the solicitor and defendant's counsel seems to indicate that defendant completed that sentence on 25 June 1969, gave an appearance bond in these cases on 26 June 1969 and was released. On 10 September 1969 counsel was appointed in these cases to represent defendant. On 11 November 1969 defendant's present counsel was first appointed, but the record shows defendant subsequently attempted to fire him and "appoint" another attorney. Whether this occasioned any delay in defendant's trial is not clear. In any event, these cases were calendared for trial and called on 25 May 1970, and defendant failed to appear. Capias was issued and returned unserved when it was ascertained that defendant was in Florida. Whether he went to Florida shortly after posting his appearance bond on 26 June 1969 or at a later date is not shown by the record. Defendant was again called for trial on 8 March 1971 and again failed to answer, and another capias was issued for his arrest. Defendant was eventually apprehended on 12 May 1971, lodged in jail, and tried at the next term of Craven Superior Court. His present counsel was reappointed on 3 June 1971. The question of speedy trial was raised for the first time when these cases were called for trial at the June 1971 Term.

Principles governing the right to a speedy trial guaranteed by the Sixth Amendment and made applicable to the States by the Fourteenth Amendment are outlined with commendable clarity by Justice Sharp in *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969). The right to a speedy trial has been considered by this Court in other cases including *State v. Ball,* 277 N.C. 714, 178 S.E. 2d 377 (1971); *State v. Cavallaro,* 274 N.C. 480, 164 S.E. 2d 168 (1968); *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965); *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870 (1965); *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891 (1964); *State v. Webb,* 155 N.C. 426, 70 S.E. 1064 (1911).

Similarly, the Supreme Court of the United States has considered the constitutional guaranty of a speedy trial in various cases including *United States v. Marion,* 404 U.S. 307, 30 L.Ed. 2d 468, 92 S.Ct. 455 (1971); *Dickey v. Florida,* 398 U.S. 30, 26 L.Ed. 2d 26, 90 S.Ct. 1564 (1970); *Smith v. Hooey,* 393 U.S. 374, 21 L.Ed. 2d 607, 89 S.Ct. 575 (1969); *Klopfer v.*

*North Carolina,* 386 U.S. 213, 18 L.Ed. 2d 1, 87 S.Ct. 988 (1967) ; *United States v. Ewell,* 383 U.S. 116, 15 L.Ed. 2d 627, 86 S.Ct. 773 (1966) ; *Pollard v. United States,* 352 U.S. 354, 1 L.Ed. 2d 393, 77 S.Ct. 481 (1957) ; *Beavers v. Haubert,* 198 U.S. 77, 49 L.Ed. 950, 25 S.Ct. 573 (1905).

[1] The threefold purpose of the constitutional guaranty of a speedy trial is to protect the accused against prolonged imprisonment, relieve him of the anxiety and public suspicion attendant upon an untried accusation of crime, and prevent him from being exposed to trial after the lapse of so great a time that the means of proving his innocence may have been lost. 21 Am. Jur. 2d, Criminal Law § 242; *State v. Hollars, supra; United States v. Ewell, supra.*

[2, 3] The word *speedy* cannot be defined in specific terms of days, months or years, so the question whether a defendant has been denied a speedy trial must be answered in light of the facts in a particular case. Four factors should be considered in determining the reasonableness of a delay: the length of the delay, the reason for the delay, prejudice to the defendant, and waiver by the defendant. *State v. Ball, supra; State v. Hollars, supra; State v. Lowry, supra.*

It is the rule in a majority of jurisdictions that a defendant waives his right to a speedy trial unless he resists postponement, demands trial, or otherwise attempts to procure a speedier trial than the State accorded him. *State v. Hollars, supra;* Annot., Speedy Trial—Waiver or Loss of Right, 129 A.L.R. 572 (1940) ; Supp. Annot., 57 A.L.R. 2d 302 (1958). Here, defendant made no demand for a trial at any time during the delay he is now protesting. He not only failed to resist postponement but failed to appear for trial when called on at least two occasions. Hence under the majority rule defendant has waived his constitutional right to a speedy trial, but we do not rest decision here on that ground. A strong minority of jurisdictions rejects the "demand doctrine" and requires only a motion to dismiss, filed before trial. See 21 Am. Jur. 2d, Criminal Law § 254. Whether an accused loses his right to a speedy trial by silence or inaction remains to be resolved by the United States Supreme Court. In *State v. Ball, supra,* we quoted with approval from Mr. Justice Brennan's concurring opinion in *Dickey v. Florida, supra,* where he excludes waiver by the defendant as one of the basic factors to be considered

in judging the reasonableness of a particular delay. In any event, we prefer to rest decision here on other grounds.

[4] Defendant has not shown that the delay in bringing him to trial was "the studied choice of the prosecution," *State v. Johnson, supra,* or even that the delay was for the convenience of the State. Neither has defendant shown, or attempted to show, that the delay created a reasonable possibility of prejudice to him. Nor has he shown any actual prejudice to his cause. No witnesses have died or disappeared and no evidence has been lost. The memories of those he assaulted are not alleged to have been affected by the passage of time. His own memory of events has not dimmed. Hence it would appear that no actual prejudice to the conduct of the defense is alleged or proven. He seems to rely solely on the possibility of prejudice inherent in any extended delay—that memories are dimmed, witnesses become inaccessible and evidence lost. "[H]owever, these possibilities are not in themselves enough to demonstrate that [appellant] cannot receive a fair trial and to therefore justify . . . dismissal." *United States v. Marion, supra.* Furthermore, "[t]he burden in on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice." *State v. Johnson, supra.*

In light of the foregoing principles we hold that the delay of which defendant complains did not violate his Sixth Amendment right to a speedy trial. Defendant's first assignment of error is overruled.

[5] Defendant next contends the imposition of greater sentences upon trial *de novo* in superior court violates his constitutional rights guaranteed by the Sixth and Fourteenth Amendments to the Federal Constitution and Article I, §§ 13 and 17 of the Constitution of North Carolina (now §§ 24 and 19 respectively of the State Constitution which became effective 1 July 1971). This constitutes his second and final assignment of error.

The question posed has already been the subject of conclusive judicial determination in North Carolina and has been determined adversely to defendant's position. *State v. Speights,*

280 N.C. 137, 185 S.E. 2d 152 (1971); *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765 (1970); *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970). It is pointless to thrash this straw again. The imposition of punishment by the superior court in excess of that imposed in the Recorder's Court of Craven County was not error. Upon appeal from an inferior court for a trial *de novo* in the superior court, the superior court may impose punishment in excess of that imposed in the inferior court provided the punishment imposed does not exceed the statutory maximum. *State v. Tolley,* 271 N.C. 459, 156 S.E. 2d 858 (1967); *State v. Morris,* 275 N.C. 50, 165 S.E. 2d 245 (1969). Decisions from other jurisdictions adopting this view include *Mann v. Commonwealth,* ___ Mass. ___, 271 N.E. 2d 331 (1971); *State v. Stanosheck,* 186 Neb. 17, 180 N.W. 2d 226 (1970); *Evans v. City of Richmond,* 210 Va. 403, 171 S.E. 2d 247 (1969); *People v. Olary,* 382 Mich. 559, 170 N.W. 2d 842 (1969); *Lemieux v. State,* Me., 240 A. 2d 206 (1968). Here, defendant was convicted of an aggravated assault in three separate cases, and the maximum punishment for each offense, when committed on 1 July 1968, was a fine and imprisonment not to exceed two years. G.S. 14-33(b), (c). If the punishment seems severe, the Board of Paroles may lawfully grant relief; but in law there is no error.

For the reasons stated the decision of the Court of Appeals upholding the judgments of the trial court is

*Affirmed.*

Chief Justice BOBBITT dissenting in part.

In my opinion there was only one assault—no battery—and therefore only one judgment was permissible.

Justices HIGGINS and SHARP join in this dissenting opinion.