STATE OF NORTH CAROLINA v. RESTONEY ROBINSON

No. 1

(Filed 14 March 1973)

1. Criminal Law § 91— motion to continue — discretionary with trial judge

Except where a motion for continuance is based upon a right guaranteed by the Federal or the State Constitution, it is addressed to the sound discretion of the trial court and the ruling of that court is not subject to review in the absence of an abuse of discretion.

2. Criminal Law § 91— denial of continuance — requisites for new trial

A new trial will not be awarded because of the denial of a motion for continuance in the absence of a showing both that there was error in the denial and that the defendant was prejudiced thereby.

3. Criminal Law § 91— same judge at second trial of defendant — insufficient ground for continuance

A defendant is not entitled, as a matter of law, to a continuance of his trial on a criminal charge for the sole reason that the judge, regularly presiding at the term for which the case is calendared, also presided at an earlier session of the court at which the defendant was tried and convicted upon a different criminal charge.

4. Witnesses § 1— mental capacity of witness to testify — sufficiency of findings on voir dire

The trial court did not err in failing to find that a State's witness lacked sufficient mental capacity to testify where the judge conducted a *voir dire* at which he considered the witness's transcript from an earlier trial and certain other documents, among them a physician's report as to the witness's ability to plead to an indictment then pending against him and to consult with counsel in preparing his defense, and where the judge, having presided at the earlier trial, had observed the witness as he testified in that action.

5. Criminal Law §§ 43, 95— photographs of deceased — admissibility for illustrative purposes

In a first degree murder case the trial court did not err in admitting into evidence certain photographic slides where it was determined on *voir dire* that the slides illustrated and explained testimony of the doctor who testified as to cause of death and where the court instructed the jury that the slides were admitted solely for illustrative purposes.

6. Criminal Law § 84; Searches and Seizures § 1— Selective Service card — seizure incident to lawful arrest — admissibility

The trial court in a first degree murder prosecution did not err in admitting into evidence a Selective Service Card taken from defendant during a search of his person incident to his lawful arrest where the card was identified by the seller of the gun used in the murder as similar to the one presented by defendant for purpose of identification when he purchased the gun.

**7. Criminal Law § 166— assignments of error abandoned**

   Assignments of error set forth in defendant's case on appeal but not brought forward or argued in his brief are deemed abandoned.

**8. Homicide § 21— first degree murder — sufficiency of evidence**

   In a first degree murder case evidence of the State was sufficient to withstand motion for judgment of nonsuit where it was ample to show that defendant procured, if he did not compel, one Tinsley to do the actual shooting of deceased and that the defendant was present, aiding and abetting in the execution of the plan.

APPEAL by defendant from *Seay, J.,* at the 28 February 1972 Criminal Session of GUILFORD.

Under an indictment, proper in form, the defendant was found guilty of murder in the first degree and was sentenced to imprisonment for life in the State prison, the jury having so recommended at the time of returning its verdict. From the judgment imposing this sentence, the defendant appeals.

Prior to trial, upon motion by the defendant, the court conducted a voir dire to determine the mental competency of Tommy Lee Tinsley, a witness for the State, to testify. The court found Tinsley competent. The evidence on this voir dire is not set out in the record upon this appeal but apparently consisted of certain documents relied upon by the defendant, including a transcript of Tinsley's testimony at a previous trial, and reports to the court of the staff of Cherry Hospital in Goldsboro, North Carolina, concerning examinations of Tinsley at the hospital. Quotations from this report, set forth in the order of the court finding Tinsley a competent witness, support such finding.

The defendant offered no evidence. That offered by the State was to the following effect:

Just prior to daylight on 30 December 1969, Walter Hubert Mills, 94 years of age, was found lying in the doorway of a bedroom just inside the front entrance to his home in Greensboro. He had been shot in the abdomen and hip. There were bullet holes through the glass of the window of the bedroom and through the glass of a window beside the front door of the house. The telephone wire leading to the house had been cut. Mills died shortly after the shooting, the cause of death being shock and cardiac arrest resulting from these gunshot wounds.

State v. Robinson

Prior to the shooting of Mills, Tommy Lee Tinsley worked for the defendant at the latter's laundromat and at his place of business known as the Do-Drop Inn. The defendant told Tinsley that Mills had some boxes of money which the defendant wanted and that he wanted Tinsley to shoot Mills. Prior to the shooting of Mills, the defendant took Tinsley to South Carolina where the defendant purchased a pistol. After returning from this trip, the defendant taught Tinsley how to use the pistol and had Tinsley do target practice with it.

About midnight, some six hours prior to the shooting of Mills, the defendant carried Tinsley to Mills' home in the defendant's automobile. Leaving Tinsley in the car the defendant, carrying a flashlight, went up to the Mills house, remained there for an interval of time and then returned to the car. At the defendant's direction, Tinsley went up to the Mills house and rang the doorbell but got no response.

The defendant and Tinsley then drove away, stopping at a phone booth from which the defendant made a telephone call. Thereafter, they drove back to the Mills house. The defendant, armed with another pistol, took his stand behind some rose bushes in the yard of a house across the street. He instructed Tinsley to go to the Mills house and ring the doorbell. Thereupon Mills was aroused and turned on a light in the house and then the porch light. As Mills was getting ready to come to the front door, the defendant told Tinsley, "Go ahead, what are you waiting on?" Tinsley then shot through the window four times and Mills fell.

The defendant and Tinsley then left the scene in the defendant's automobile. When they got back to the defendant's home, the defendant remarked that he had to go back because he had left a cigar. The defendant and Tinsley then returned to the Mills home in the defendant's truck but were unable to search for the cigar butt due to the fact that police officers had arrived at the Mills home. A cigar butt of the brand habitually smoked by the defendant was found by the police behind the shrubbery in which Tinsley testified that the defendant had stationed himself prior to the shooting. Later in the morning the defendant again went to the Mills home and, upon arrival, asked police officers then at the scene, "Is the old man dead?"

Following the shooting, the defendant and Tinsley drove out into the country and buried the pistol with which Tinsley

had shot Mills. Subsequently, the police, accompanied by Tinsley, endeavored unsuccessfully to find the pistol.

Tinsley did not know Mills and "had nothing against him." The defendant told Tinsley that if Tinsley did not do as he instructed him to do, the defendant would kill him. After Tinsley had shot Mills the first time, the defendant told him to shoot again and Tinsley did so. Throughout the shooting the defendant had his gun on Tinsley.

The pistol, purchased by the defendant in South Carolina, was a .32 caliber Arminius, a German made revolver. Bullets removed from the body of Mills were .32 caliber and had been fired from a weapon with ten lands and grooves twisting to the right, a characteristic of an Arminius.

Mills did keep a considerable amount of money in a box or boxes in his home.

The defendant became dissatisfied with his trial counsel following the conclusion of the trial and was represented by different counsel on appeal. Both the trial and the appellate counsel were privately employed.

*Attorney General Morgan and Associate Attorney Maddox for the State.*

*James W. Smith for defendant.*

LAKE, Justice.

[1, 2] The defendant's first contention in this Court is that the trial court erred in denying his motion for a continuance, thus depriving him and his counsel of adequate time in which to prepare his defense. Except where such motion is based upon a right guaranteed by the Federal or the State Constitution, it is addressed to the sound discretion of the trial court and the ruling of that court is not subject to review in the absence of an abuse of discretion. *State v. Stepney,* 280 N.C. 306, 312, 185 S.E. 2d 844; *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526; *State v. Moses,* 272 N.C. 509, 158 S.E. 2d 617; *State v. Stinson,* 267 N.C. 661, 148 S.E. 2d 593. A new trial will not be awarded because of the denial of a motion for continuance in the absence of a showing both that there was error in the denial and that the defendant was prejudiced thereby. *State v. Moses, supra.*

Continuances should not be granted unless the reasons therefor are fully established. *State v. Stepney, supra.*

In the present case the defendant offered no evidence. There is nothing whatever in the record to suggest that he desired to call any witness who was not available to him at the trial. There is nothing in the record, or in his brief in this Court, to support his contention that, in the cross-examination of witnesses for the State, the presentation of evidence in his own behalf or in the preparation for trial, he or his counsel was handicapped by the denial of his motion for a continuance. The defendant was arrested on 20 August 1971 and the indictment was returned by the grand jury on 6 September 1971. The trial was commenced on 6 March 1972 and continued to 10 March 1972, when the jury returned its verdict and sentence was imposed.

The motion for a continuance shows upon its face that the defendant was previously tried on the charge of conspiracy to commit murder at the 3 January 1972 session of the superior court and thereafter made a motion before Judge Seay for a speedy trial in this case. Thereupon the judge directed the solicitor to try this case at the earliest possible time. It was docketed for trial on 21 February 1972 and the defendant then stated he was ready for trial, but a continuance was granted upon the motion of the State. Clearly, nothing in this sequence of events indicates an abuse of discretion in denying the defendant's motion for a continuance filed at the commencement of the trial on 6 March 1972.

[3] The motion for continuance did not assert the defendant's need for additional time in order to prepare for trial. It states, as its sole ground, that Judge Seay, having presided at the above mentioned trial of the defendant on the charge of conspiracy to commit murder, "the defendant feels that it will be prejudicial to his cause to have this case tried before the same trial judge." A defendant is not entitled, as a matter of law, to a continuance of his trial on a criminal charge for the sole reason that the judge, regularly presiding at the term for which the case is calendared, also presided at an earlier session of the court at which the defendant was tried and convicted upon a different criminal charge. This assignment of error is without merit.

[4] The defendant's next contention in this Court is that the trial court erred in failing to find that the State's witness,

Tinsley, lacked sufficient mental capacity to be permitted to testify. It is quite clearly established in this jurisdiction that a challenge to the competency of a witness on the ground of lack of mental capacity is addressed to the discretion of the trial judge. As Justice Sharp, speaking for this Court in *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793, said: "Unsoundness of mind does not per se render a witness incompetent, the general rule being that a lunatic or weak-minded person is admissible as a witness if he has sufficient understanding to apprehend the obligation of an oath and is capable of giving a correct account of the matters which he has seen or heard with respect to the questions at issue. The decision as to the competency of such a person to testify rests largely within the discretion of the trial court." Accord: *State v. Squires,* 265 N.C. 388, 144 S.E. 2d 49; *State v. Cade,* 215 N.C. 393, 2 S.E. 2d 7; Stansbury, North Carolina Evidence, 2d Ed, § 55; 97 C.J.S., Witnesses, § 57(b).

The defendant's motion that Tinsley be found incompetent to testify was filed on 6 March 1972 at the opening of the trial. The trial court conducted a voir dire at which defendant's counsel simply stated that Tinsley had been sent to a mental hospital by order of a judge of the district court and that he desired to offer no evidence as to Tinsley's mental capacity, except a transcript of Tinsley's testimony at the above mentioned trial on the charge of conspiracy and certain other documents. These documents included the report of the assistant superintendent of the hospital, at which the examination of Tinsley was conducted and the report of another of the examining physicians at the hospital. The order of Judge Seay denying the motion recites that the court considered all of these documents. The reports of the examining physicians were to the effect that Tinsley was able to plead to the indictment then pending against him and to consult with his counsel in the preparation of his defense. It further appears from the present record that Judge Seay, having presided at the earlier trial, had observed Tinsley as he testified in that action. Under these circumstances, there was no necessity for Judge Seay to interrogate Tinsley again in order to determine his mental capacity to testify. There is no merit in this assignment of error.

[5] The defendant's third contention in this Court is that there was error in admitting into evidence, as exhibits for the State, certain photographic slides, exhibited to the jury by projection

upon a screen after the court overruled the defendant's objection. The doctor who performed the autopsy upon the body of Mills testified that he, himself, took the pictures during the course of the autopsy and that they fairly and accurately represented what they purported to show. The court conducted a voir dire at which it inspected projections of the slides in the absence of the jury. They portrayed the entrance wounds and the courses of the bullets into and through the abdominal area, which formed the basis for the opinion of the doctor as to the cause of death.

Having ruled that the photographs were admissible, the court properly instructed the jury that they were admitted solely for the purpose of illustrating and explaining the testimony of this witness and not as substantive evidence. There was no error in this ruling. The number of photographs was not excessive and each was revelant upon the question of the cause of death. Under such circumstances, the fact that photographs depict a gruesome or gory spectacle does not render them inadmissible. *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652; *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241; *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824; Stansbury, North Carolina Evidence, 2d Ed, § 34.

[6] The defendant's fourth and final contention in this Court is that there was error in admitting into evidence a Selective Service Card taken from the person of the defendant at the time of his arrest on 20 August 1971. The arresting officer had a warrant for the defendant's arrest on the charge of murder, the validity of which warrant is not contested by the defendant. The search was incident to the arrest and the card, showing the defendant's residence to be in Florence, South Carolina, was identified by the seller of the gun used by Tinsley as similar to the one presented to him by Robinson for purposes of identification when Robinson purchased the weapon. Under these circumstances, there was no error in admitting the card into evidence. *State v. Jackson,* 280 N.C. 122, 185 S.E. 2d 202; *State v. Roberts,* 276 N.C. 98, 171 S.E. 2d 440; *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269. In any event, this evidence related to a minor incident of the State's case and it is inconceivable that the jury would have returned a different verdict had this evidence not been introduced. Thus, even if erroneous, this ruling of the trial court would not be ground for a new trial. *State v. Fletcher,* 279 N.C. 85, 100, 181 S.E. 2d 405.

[7]  The five remaining assignments of error set forth in the defendant's case on appeal are not brought forward in his brief and no authorities are cited or argument made therein in support thereof. They are, therefore, deemed abandoned. Strong, N. C. Index 2d, Criminal Law, § 166, and cases there cited. Due, however, to the serious nature of the case, we have examined each of them and find no merit therein. They relate to the denial of a motion to strike the entire testimony of the doctor who performed the autopsy, the admission in evidence of testimony that the deceased kept a considerable amount of money in a box in his home, the denial of a motion to suppress, as evidence, bullets removed from the body and identified positively by the doctor making the autopsy, the denial of a motion for nonsuit, and a portion of the charge to the jury.

[8]  As to the motion for judgment of nonsuit, the evidence introduced by the State is ample, if true as the jury believed it to be, to show that the defendant procured, if he did not compel, Tinsley to do the actual shooting of Mills and that the defendant was present, aiding and abetting in the execution of the plan. As said by Justice Sharp in *State v. Benton, supra:*

> "Parties involved in the commission of a murder are either principals or accessories. 'A principal in the first degree is the person who actually perpetrates the deed either by his own hand *or through an innocent agent.'* Any other who is actually or constructively present at the place of the crime either aiding, abetting, assisting, or advising in its commission, or is present for that purpose, is a principal in the second degree. In our law, however, 'the distinction between principals in the first and second degrees is a distinction without a difference.' Both are principals and equally guilty." (Citations omitted throughout.)

The defendant, found guilty of first degree murder, was sentenced to imprisonment for life, pursuant to the recommendation of the jury made at the time it returned its verdict, such verdict and recommendation being permitted by the instructions of the trial court. It will be observed that the murder of which the defendant has been found guilty was committed and that he was convicted and sentenced prior to the decision of the Supreme Court of the United States in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 2d 346, and prior to our de-

cision in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19. The sentence to imprisonment for life will, therefore, not be disturbed.

No error.