STATE OF NORTH CAROLINA v. TERRY STEPHEN HILL

No. 60

(Filed 6 May 1975)

1. Constitutional Law § 30— speedy trial — 22-month delay between offense and trial

Defendant was not denied the right of a speedy trial on a secret assault charge by a 22-month delay between the offense and trial where defendant was in prison during most of such time, the delay was due to over-crowded court dockets, a large number of capital cases and a limited number of criminal sessions, defendant made no request for trial, and defendant has shown no prejudice because of the delay.

2. Criminal Law § 91— two assault charges based on same incident — denial of continuance of one charge

Where defendant was charged in separate indictments with secret assault and with felonious assault, the trial court did not err in the denial of defendant's motion for continuance of the felonious assault charge made on the ground that the indictment in such case was returned just one day prior to trial and defendant was not informed of it until shortly before trial since both offenses arose out of the same occurrence and involved the same victim, the same attorney who had previously been appointed to represent defendant on the secret assault charge was appointed to represent defendant on the felonious assault charge, and the defense on the felonious assault charge would not be appreciably different from that on the secret assault charge.

3. Constitutional Law § 34; Criminal Law § 26— double jeopardy — secret assault — felonious assault — same occurrence

Defendant was not placed in double jeopardy by his convictions of secret assault and felonious assault with a deadly weapon with intent to kill inflicting serious injury growing out of the same occurrence since each offense has additional and distinct elements not present in the other.

4. Assault and Battery § 15— secret assault — instructions

In a prosecution for secret assault, the trial court did not err in charging the jury that it could find that the assault was committed in a secret manner if it found beyond a reasonable doubt that the victim did not know that he was to be attacked by defendant or that defendant had the intention of attacking him.

Chief Justice SHARP concurring in result.

ON *certiorari* to review decision of the Court of Appeals reported in 23 N.C. App. 614, 209 S.E. 2d 528 (1974) (opinion by Campbell, J., Britt and Vaughn, J.J., concurring), which found no error in defendant's trial before *Webb, S.J.*, at the 27 May 1974 Special Criminal Session of BURKE County Superior Court.

The criminal actions herein did not originate with warrants, but originated in the superior court under the following bills of indictment:

(1) *Indictment for Secret Assault* (# 72-CRS-6079, returned at the August 1972 Session). This bill charged that defendant, Terry Stephen Hill, "on the 1st day of July, 1972, . . . did, unlawfully, wilfully, maliciously and feloniously in a secret manner assault, beat and wound one, Jack A. Ledford by waylaying and otherwise, with a deadly weapon, to wit: A round metal bar approximately one and one-half (1½") inches in diameter and approximately fifteen (15") inches long with intent to feloniously kill and murder the said Jack A. Ledford. . . ."

(2) *Indictment for Felonious Assault* (# 72-CRS-6079-A, returned at the May 1974 Session). This bill charged that defendant, Terry Stephen Hill, "on the 1st day of July 1972, . . . did, unlawfully, wilfully and feloniously assault Jack A. Ledford with a certain deadly weapon, to wit: A Round Metal Bar approximately Fifteen (15") Inches Long and One and One-Half (1½") Inch [sic] in diameter with the felonious intent to kill and murder the said Jack A. Ledford inflicting serious injuries, not resulting in death, upon the said Jack A. Ledford to wit: Multiple skull fractures, multiple facial fractures, severe cerebral contusions, and multiple contusions and lacterations of the face and scalp, resulting in serious, painful, and permanent injuries about the head and face of Jack A. Ledford. . . ."

Relevant events occurring prior to defendant's trial, and stipulated to by the parties, are noted below:

On 1 July 1972, the date of the alleged offenses, defendant was incarcerated in the Western Correctional Center of the North Carolina Department of Correction located in Burke County. On 1 September 1972 upon return of the true bill charging defendant with secret assault Judge Sam J. Ervin III appointed defendant's present counsel, John H. McMurray, to represent him.

State v. Hill

Defendant completed all sentences on unrelated offenses and was released from the Western Correctional Center sometime during the month of April, 1974. Upon his release defendant was transferred to the Caldwell County Jail for confinement pending his trial on the secret assault charge.

On 19 April 1974 defendant filed a motion praying that the court fix a reasonable bond for his appearance at the trial on the charge of secret assault, which had been scheduled for the 27 May 1974 Special Criminal Session. Arguments on this motion were heard before Judge Ervin on Saturday, 27 April 1974, in Morganton. Following this hearing, Judge Ervin did not enter a formal order but indicated that if defendant was not tried at the next term of criminal court, he would order his release on a One Thousand Dollar ($1,000.00) bond.

The following events occurred prior to the presentation of evidence at defendant's trial on 28 May 1974:

Defendant entered a plea of not guilty to the charge of secret assault (case # 72-CRS-6079). In addition, defendant filed a written motion to dismiss this case on the ground that he had been denied his constitutional right to a speedy trial. As to the charge of felonious assault (case # 72-CRS-6079-A), defendant stood mute, whereupon the court entered a plea of not guilty. Thereafter, defendant made an oral motion to continue this case (felonious assault) on the ground that he had first been apprised of this charge at the time he entered the courtroom, some ten minutes prior to the making of the motion. It appears from the record that bill # 72-CRS-6079-A had been sent to and returned as "true" by the Grand Jury on the preceding day, 27 May 1974, the first day of the Special Criminal Session. Following a voir dire hearing, both of defendant's motions were denied. Thereafter, over defendant's objection, the court granted the State's motion to consolidate these cases for trial. The court also appointed defendant's attorney in the secret assault case to represent him in the felonious assault case.

The State then offered evidence that tended to show the following:

On 1 July 1972 defendant was confined on the 14th floor of the Western Correctional Center. Jack A. Ledford was the only security guard in charge of the 14th floor on the 11:00

p.m. to 7:00 a.m. shift, commencing on 1 July 1972. Shortly after his arrival, he told the inmates "to stay the hell out of the halls." Reacting to this order, defendant told a fellow inmate that he was going to kill Ledford. Thereafter, Ledford permitted the inmates to watch television in the lobby area.

At approximately 12:00 o'clock midnight, Ledford announced that he was working two floors, the 13th and the 14th. Following this announcement, he went down to the 13th floor. During this period, defendant unscrewed a metal mop handle from a mop bucket. This handle was approximately fifteen inches in length. After securing the handle, defendant wrapped a towel around it, placed himself in the mop room, and hid beside the entrance door. When Ledford returned to the 14th floor, another inmate, Costner, asked him to go to the mop room so that he could return a broom. When Ledford and Costner reached the entrance to the mop room, Costner shoved Ledford into the room and defendant struck him several times on the head and across the forehead with the mop handle. Following the attack, defendant procured Ledford's keys and wallet, ran down one of the corridors, and tried to open a fire escape door. Unable to open this door, he ran back up the corridor and threw the keys and the wallet on the floor beside Ledford. Thereafter, defendant ran back down the corridor, entered his room and shut the door.

As a result of the attack, Officer Ledford received very serious injuries and was rendered unconscious for approximately sixteen days. After regaining consciousness, it was subsequently determined that he had lost the greater portion of his eyesight and was permanently incapacitated. At the trial, Ledford's wife, Nancy Ellen, described the nature and effect of his injuries as follows: "After July 2, 1972, physically, when he came home, Jack could not see for one thing. . . . Also, mentally, he didn't really realize he had any children. . . . You had to give him medication to be able to control [him]. . . . His teeth were wired together. He had to be fed by a blender only. He had tongs which were inserted five places in his skull to hold his face up. His face was crushed completely, powdered into little pieces and they had to hold the structure up by wires coming out of his cheekbone, bolted into his skull in five places. . . . He has not been able to work since he has been at home . . . . " Officer Ledford did not testify.

---

State v. Hill

---

Defendant offered no evidence. Thereafter, the jury returned guilty verdicts as to both charges. The court entered judgments on these verdicts sentencing defendant to 20 years' imprisonment on the secret assault conviction and to 10 years' imprisonment on the felonious assault conviction, the latter sentence to run concurrently with the first.

*Attorney General Rufus L. Edmisten by Associate Attorney Richard F. Kane for the State.*

*John H. McMurray for defendant appellant.*

COPELAND, Justice.

[1] In Assignment of Error No. 1 defendant challenges the refusal of the trial court to grant his motion to dismiss the secret assault bill on the ground his Sixth Amendment right to a speedy trial had been denied.

Numerous decisions by the federal courts and by this Court have established the following four interrelated factors to be considered in determining if a defendant's right to a speedy trial has been violated. (1) The length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice resulting to defendant from the delay. *See, e.g., Barker v. Wingo,* 407 U.S. 514 (1972); *United States v. Macino,* 486 F. 2d 750 (7th Cir. 1973); *State v. O'Kelly,* 285 N.C. 368, 204 S.E. 2d 672 (1974); *State v. Brown,* 282 N.C. 117, 191 S.E. 2d 659 (1972) (citing nine cases); *State v. Harrell,* 281 N.C. 111, 187 S.E. 2d 789 (1972); *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969). *See also* Annot., 57 A.L.R. 2d 302 (1958), especially supplemental decisions.

In applying the above factors, the courts have adopted a balancing approach. *See, e.g., Barker v. Wingo, supra* at 530; *United States v. Macino, supra* at 752; *State v. O'Kelly, supra* at 371, 204 S.E. 2d at 674. Nevertheless, it is still necessary to examine each factor separately.

*Length of Delay.* The delay in the instant case is not insubstantial since it involves a period of some twenty-two months. However, we elect to view this factor merely as the "triggering mechanism" that precipitates the speedy trial issue. Viewed as such, its significance in the balance is not great. *See, e.g., Bar-*

ker v. Wingo, supra at 530; State v. Harrell, supra at 115, 187 S.E. 2d at 791.

*Reason for Delay.* In *Barker, supra,* the United States Supreme Court stated that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government." However, the Court went on to state that "[a] more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." 407 U.S. at 531. In this State, the burden of showing neglect or wilful delay is on the defendant. *See, e.g., State v. Harrell, supra; State v. Johnson, supra.* This burden has not been met in this case. In fact, the record shows that the delay was due to overcrowded court dockets, a large number of capital cases, and a limited number of criminal sessions.

*Assertion of Right to Speedy Trial.* Failure to demand a speedy trial does not constitute a waiver of that right, but it is a factor to be considered. In *Barker,* the Court emphasized that the assertion of the right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." 407 U.S. at 531-32. However, the Court was quick to emphasize that the failure to assert the right will "make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* In the instant case, the record shows that defendant never requested his case to be placed upon the court calendar for trial.

*Prejudice.* This is the most elusive factor enunciated in *Barker.* As to prejudice, the Court offered the following guidelines:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pre-trial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Of these, the most serious is the last,* because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 532. (Emphasis supplied.)

Oppressive pre-trial incarceration was the only factor addressed by defendant during the course of the voir dire hearing on the speedy trial motion. Defendant testified about alleged inhuman treatment he received while incarcerated on unrelated offenses. However, the record does not reflect any causal relationship between defendant's alleged inhuman treatment and the indictment for secret assault.

Accordingly, in balancing the above factors, we believe the scales fall *heavily* in favor of the State. This assignment is therefore overruled.

[2] In Assignment of Error No. 2 defendant contends that the trial court committed prejudicial error in refusing to grant his motion for a continuance in the felonious assault case (# 72 CRS-6079-A). The thrust of defendant's argument appears to be that his trial under this second indictment would (1) call for a different defense; (2) require a reconsideration of his position; (3) deny him an opportunity to discuss a plea; and (4) deny him the opportunity to consider the effect of the two separate charges.

In most instances this would undoubtedly be a valid contention for "the constitutional guaranty of the right of counsel requires that the accused and his counsel shall be afforded a reasonable time for preparation of his defense." *State v. Gibson,* 229 N.C. 497, 501, 50 S.E. 2d 520, 523 (1948), *quoted with approval in State v. Moses,* 272 N.C. 509, 512, 158 S.E. 2d 617, 619 (1968) (per curiam). *Accord, State v. Phillip,* 261 N.C. 263, 134 S.E. 2d 386 (1964). In the instant case, however, we find no facts that would except defendant's motion for a continuance from the general rule that such a motion is addressed to the sound discretion of the trial judge, whose ruling thereon is subject to review only in case of manifest abuse. *See, e.g., State v. Robinson,* 283 N.C. 71, 194 S.E. 2d 811 (1973); *State v. Cox,* 281 N.C. 275, 188 S.E. 2d 356 (1972); *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296 (1972). *See also* 2 Strong, N. C. Index 2d, Criminal Law § 91 (1967). Defendant had been charged on 1 September 1972 with secret assault upon Jack A. Ledford on 1 July 1972. Present counsel was appointed to represent defendant on the same day this first indictment was returned. The subsequent charge of felonious assault arose out of the same beating of Officer Ledford on 1 July 1972. Present counsel was also appointed to represent defendant in this case. It appears to us that the defense on the charge of felonious assault

would not be appreciably different from that on the charge of secret assault. Furthermore, we believe that defendant has failed to show that any prejudice resulted from the trial court's denial of his motion. *Cf. State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335 (1975).

[3] In his next series of assignments, defendant contends that the two charges against him, both arising out of the same transaction and occurrence, constituted double jeopardy in that one offense was split into two parts.

Double jeopardy has long been a fundamental prohibition of our common law and is deeply imbedded in our jurisprudence. *See, e.g., State v. Battle,* 279 N.C. 484, 183 S.E. 2d 641 (1971); *State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745 (1971); *State v. Partlow,* 272 N.C. 60, 157 S.E. 2d 688 (1967); *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838 (1962); *State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243 (1954); *State v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871 (1951); *State v. Midgett,* 214 N.C. 107, 198 S.E. 613 (1938); *State v. Mansfield,* 207 N.C. 233, 176 S.E. 761 (1934); *State v. Prince,* 63 N.C. 529 (1869). *See also* trial of William Penn and William Mead, 6 State Trials 952 (1816), and case of Edward Bushell for alleged misconduct as a juror at the Penn trial. *Id.* at 999. Rather than being a single doctrine, double jeopardy is actually comprised of three separate though related rules, prohibiting (1) reprosecution for the same offense following acquittal, (2) reprosecution for the same offense following conviction, and (3) multiple punishment for the same offense. *See Patton v. North Carolina,* 381 F. 2d 636, 643-44 (4th Cir., 1967), *cert. denied,* 390 U.S. 905 (1968). *See also* Comment, Twice in Jeopardy, 75 Yale L. J. 262, 266 (1965). In the instant case, we are only concerned with the third rule.

The general rule in this State as to multiple punishments for the same offense is as follows: "When the facts constitute two or more offenses, wherein the lesser offense is necessarily involved in the greater . . . and when the facts necessary to convict on a second prosecution would necessarily have convicted on the first, then the first prosecution to a final judgment will be a bar to the second." *State v. Birckhead, supra,* 256 N.C. at 497, 124 S.E. 2d at 841. This statement was quoted from *Dowdy v. State,* 158 Tenn. 364, 13 S.W. 2d 794 (1929), and had previously been quoted with approval by Chief Justice Stacy in *State v. Midgett, supra.*

---

**State v. Hill**

---

The above cited rule is generally referred to as the "same evidence test." *See* Comment, *Criminal Law—Multiple Punishment and the Same Evidence Rule,* 8 Wake Forest L. Rev. 243 (1972). For applications of the rule *see, e.g., State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102 (1971); *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424 (1955); *State v. Robinson,* 116 N.C. 1047, 21 S.E. 701 (1895). *Cf. State v. Hatcher,* 277 N.C. 380, 390, 177 S.E. 2d 892, 899 (1970). *See also State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971). A comparative analysis of the rule, contained in the law review comment, *supra,* is helpful:

> "For an offense to be the same in law as another offense, there must be at least partial reciprocity of the elements required by the legislative enactments. Therefore, in proving the required elements A, B, and C under one statute in the first indictment, and in proving the required elements A, B, and D under another statute in the second indictment, one will not run afoul of the former jeopardy rule. C, an element of the first is not an element of the second. D, an element of the second, is not an element of the first indictment. Therefore *each* offense required proof of an element which the other did not. It is of no consequence that element C resembles element D, nor that element D was less heinous than element C." 8 Wake Forest L. Rev. at 248.

"The only exception to this well established rule is the holding in some cases that conviction of a minor offense in an inferior court does not bar a prosecution for a higher crime, embracing the former, where the inferior court did not have jurisdiction of the higher crime. [Citations omitted.]" *State v. Birckhead, supra* at 498, 124 S.E. 2d at 842.

One of the clearest applications of this rule that we have been able to find is *State v. Richardson, supra.* In that case, defendant was charged with armed robbery and with felonious assault with intent to kill inflicting serious bodily injuries not resulting in death. Defendant was convicted of both charges and on appeal to this Court filed a motion to arrest the judgment on the conviction for felonious assault on the ground that it was a lesser included offense of armed robbery. This Court, in an opinion by Chief Justice Bobbitt, rejected this contention and denied defendant's motion. The Court's reasoning is instructive:

> "The crime of robbery includes an assault on the person. [Citation omitted.] The crime of armed robbery de-

fined in G.S. § 14-87 includes an assault on the person with a deadly weapon. The crime of felonious assault defined in G.S. § 14-32(a) is an assault with a deadly weapon which is made with intent to kill and which inflicts serious injury. These additional elements of the crime of felonious assault are not elements of the crime of armed robbery defined in G.S. § 14-87.

"If a person is convicted simultaneously of armed robbery and of the lesser included offense of assault with a deadly weapon, and both offenses arise out of the same conduct, as in *State v. Parker*, 262 N.C. 679, 138 S.E. 2d 496 (1964), and *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970), and separate judgments are pronounced, the judgment on the separate verdict of guilty of assault with a deadly weapon must be arrested. In such case, the armed robbery is accomplished by the assault with a deadly weapon and *all* essentials of this assault charge are essentials of the armed robbery charge. However, if a defendant is convicted simultaneously of armed robbery and of *felonious* assault under G.S. § 14-32(a), neither the infliction of serious injury nor an intent to kill is an essential of the armed robbery charge. A conviction of armed robbery does not establish a defendant's guilt of felonious assault." *Id.* at 628, 185 S.E. 2d at 107-08.

The two crimes in the instant case share common elements, but like the offenses in *Richardson*, each also contains distinct elements not found in the other.

The felony described in G.S. 14-31 is often referred to as malicious secret assault and battery with a deadly weapon (secret assault). The statute provides as follows:

"If any person shall in a secret manner maliciously commit an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill such other person, notwithstanding the person so assaulted may have been conscious of the presence of his adversary, he shall be guilty of a felony punishable by a fine or imprisonment for not less than one nor more than twenty years, or both such fine and imprisonment."

The following elements therefore must be proven beyond a reasonable doubt in order to establish the crime of secret

assault: (1) secret manner; (2) malice; (3) assault and battery; (4) deadly weapon; and (5) intent to kill.

The felony described in G.S. 14-32(a) is often referred to as felonious assault. The statute provides as follows:

> "Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury is guilty of a felony punishable by a fine, imprisonment for not more than 20 years, or both such fine and imprisonment."

The following elements therefore must be proven beyond a reasonable doubt in order to establish the crime of felonious assault: (1) assault; (2) deadly weapon; (3) intent to kill; and (4) infliction of serious injury.

At this point, we note that Chapter 229, 1973 Session Laws substituted "20 years" for "10 years" in the above subsection. Chapter 229 became effective on 1 January 1974 and by express terms was not applicable "to any offense committed prior to the effective date." Section 5, Chapter 229, 1973 Session Laws.

The existence of three common elements (i.e., assault, deadly weapon and intent to kill) in both offenses does not preclude conviction for both since each requires proof of an element that the other does not. G.S. 14-32(a), *supra*, in addition to the above common elements, requires proof of the *infliction of serious injury*. This element must be proven in order to support a conviction under G.S. 14-32(a); but, it need not be shown at all in a prosecution under G.S. 14-31. Likewise, G.S. 14-31, *supra*, in addition to the above common elements, requires proof of *secret manner* and of *malice*. These elements must be proven in order to support a conviction under G.S. 14-31; but, they need not be shown at all in a prosecution under G.S. 14-32(a). In other words, secret assault is not a higher degree of felonious assault with a deadly weapon with the intent to kill inflicting serious bodily injury. *See State v. Lewis*, 274 N.C. 438, 164 S.E. 2d 177 (1968) (indictment for secret assault under G.S. 14-31 will not support conviction for felonious assault under G.S. 14-32(a) since it contained no allegation that victim was seriously injured). *See also* 2 Strong, N. C. Index 2d, Criminal Law § 26 (1967). "While the law jealously protects a culprit from double punishment, it does not allow him to commit two separate and distinct offenses for the price of one . . . . " *State v. Rich-*

*ardson, supra,* 279 N.C. at 630, 185 S.E. 2d at 109, *quoting from People v. Thomas,* 59 Cal. App. 2d 585, 139 P. 2d 359 (1943). Accordingly, these assignments are overruled.

[4]   In his next assignment of error, defendant contends that the trial court erred in charging the jury as to the meaning of secret manner in the crime of secret assault. Specifically, defendant excepted to that portion of the charge wherein the court instructed the jury if they were "satisfied beyond a reasonable doubt that prior to the time of the assault Jack Ledford did not know that he was to be attacked by [defendant], or that [defendant] had the intention of attacking him," then they would be justified, provided the State had proven all the other elements of the crime beyond a reasonable doubt, in finding that the assault had been committed in "a secret manner" and that defendant was guilty of the felony of secret assault.

Defendant argues that if the above quoted portion of the charge is a correct statement of the law of secret assault, then any assailant could be convicted of secret assault if the victim did not know the assailant had the intention of attacking him. This contention has no merit whatsoever. As previously noted, the "secret manner" of the assault is only one of the five elements that the State must prove beyond a reasonable doubt in order to establish the commission of this crime. Therefore, if the State sought a conviction under G.S. 14-31 and only proved that the assault was made in a secret manner, defendant would be entitled to judgment as of nonsuit. As to the above charge on the element of secret manner, we find no error. It is a correct statement of this element of the offense.

Finally, defendant contends that in charging the jury on secret assault the court failed to state any facts or contentions under which the jury could acquit defendant. "The general rule is that objections to the charge in stating contentions of the parties or in recapitulating the evidence must be called to the court's attention in apt time to afford opportunity for correction." *State v. Lampkins,* 286 N.C. 497, 506, 212 S.E. 2d 106, 111 (1975) ; *State v. Henderson,* 285 N.C. 1, 26, 203 S.E. 2d 10, 27 (1974). *See also* 3 Strong, N. C. Index 2d, Criminal Law § 163 (1967). This was not done in the instant case. Furthermore, when the charge is considered contextually, it appears to be sufficient.

The facts indicate that defendant left his victim, the young father of two minor children, with devastating physical and

mental injuries. He will carry these permanent injuries with him to the grave. Defendant has had a fair trial, free from prejudicial error and, therefore, for the reasons stated herein, the judgment of the Court of Appeals is

Affirmed.

Chief Justice SHARP concurring in result:

- I concur in the Court's decision that there was no error in defendant's conviction of secret assault, a violation of G.S. 14-31, and felonious assault, a violation of G.S. 14-32(a). However, I deem it appropriate to point out that, because of fundamental differences between this case and *State v. Richardson*, 279 N.C. 621, 185 S.E. 2d 102 (1971), *Richardson* is not controlling here. *Richardson* involved the felonies of armed robbery and felonious assault. The gravamen of armed robbery is the theft of the victim's property; the gravamen of felonious assault is injury to the victim's person. In the present case, the gravamen of the two charges for which defendant has been convicted is one assault, a single act of violence with one purpose causing one injury. It was one assault which met the specifications of two statutes. Unlike some states, we have no statute which limits punishment to a single sentence in situations such as this. *See* 8 Wake Forest Law Rev. 243 (1972). However, the Court accomplished this result by imposing concurrent sentences.