State v. O'Kelly

STATE OF NORTH CAROLINA v. JAMES FRANKLIN O'KELLY III

No. 7420SC177

(Filed 20 February 1974)

1. **Constitutional Law § 30— speedy trial — delay between arrest and trial — delay not purposeful or oppressive**

    Defendant was not denied his right to a speedy trial by the delay between his arrest on 4 August 1972 and his trial on 30 July 1973, although defendant made numerous requests beginning in September 1972 that his case be promptly tried because four witnesses who could prove his innocence were planning to leave the State, defendant presented evidence that the witnesses had left the State prior to the trial and could not be located, and defendant had been in Central Prison serving a sentence for an unrelated offense since before his first request for a speedy trial, where defendant failed to show that the delay in bringing him to trial was due to the neglect or willfulness of the prosecution or that the delay was purposeful or oppressive.

2. **Larceny § 8— possession of recently stolen property — instructions**

    In a prosecution for breaking and entering and larceny, the trial court did not err in charging that in order to apply the doctrine of possession of recently stolen property the jury must find that defendant had possession of the item so soon after it was stolen and under such circumstances as to make it unlikely that he had obtained possession "honestly."

    Judge PARKER dissenting.

APPEAL from *Chess, Judge,* 30 July 1973 Special Criminal Session, UNION Superior Court.

Defendant was tried upon a bill of indictment, in proper form, charging the felonies of breaking and entering, larceny, and receiving stolen goods. The last charge was dismissed upon motion by defendant and the jury returned a verdict of guilty of the other two charges. From judgment imposing prison sentence of five years for each charge, the sentences to run consecu-

tively and to begin at the expiration of any sentence defendant was then serving, defendant appeals.

*Attorney General Robert Morgan, by Deputy Attorney General R. Bruce White, Jr., and Assistant Attorney General Guy A. Hamlin, for the State.*

*Craighill, Rendleman & Clarkson, by L. Stanley Brown, for defendant appellant.*

BRITT, Judge.

[1]  By his first assignment of error, defendant contends the trial court erred in denying his motion to dismiss on the ground that his constitutional right to speedy trial had been violated. On 6 June 1973, Judge Chess conducted an evidentiary hearing on defendant's motion at which time defendant presented evidence tending to show:

He was arrested on account of the charges involved here on or about 4 August 1972. At the time of the hearing, he was serving a 26-30 years sentence at Central Prison pursuant to conviction (evidently in 1972) on another charge and had been in Central Prison continuously since late August or early September of 1972. In September of 1972, defendant wrote a letter to the solicitor of the Twentieth Judicial District, advising that witnesses were available who would prove his innocence in the pending cases but some of them were planning to leave North Carolina; he requested that he be given a trial at the 16 October 1972 session of the court. Around 15 October 1972, defendant prepared and mailed to the solicitor a motion asking for a speedy trial or a dismissal of the charges. On 12 February 1973, he wrote a letter to the Clerk of Superior Court of Union County (with copies to the resident judge, solicitor, and defendant's attorneys) calling attention to his previous communications and stating that, since that time, material defense witnesses had moved to Florida; he further requested a trial at the 16 February 1973 session of the court. On 20 February 1973, Resident Judge McConnell wrote defendant and advised that he was informed that the solicitor expected to call defendant's cases for trial in March or April. On 7 May 1973, defendant obtained subpoenas for four witnesses, ordering them to appear in Union Superior Court on 9 May 1973; defendant provided Charlotte addresses for the witnesses but the subpoenas were returned

unserved. Defendant was not given a trial at the May Session and on 5 June 1973, filed a motion setting forth the foregoing facts and asking that the charges against him be dismissed for the reason that his constitutional rights to a speedy trial had been violated.

A witness (identified as defendant's fiancee) testified that during 1972 she talked with the four witnesses named in the subpoenas; that two of them stated they were with defendant on the day of the alleged crimes; that the other two stated they saw defendant purchase from a third party the gun allegedly stolen; that neither of the witnesses is now available; and she had been advised that the witnesses were in Florida but that she was unable to obtain their addresses.

The court made findings of fact and concluded that the delay complained of was not violative of defendant's rights and denied the motion.

In the recent case of *State v. Frank,* 284 N.C. 137, 141, 200 S.E. 2d 169, 172-173 (1973), the Supreme Court said:

"Of course the right to a speedy trial is an integral part of the fundamental law of this State, and the fact that an accused is in prison for other offenses does not mitigate against his right to a speedy and impartial trial. *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969); *Smith v. Hooey,* 393 U.S. 374, 21 L.Ed. 2d 607, 89 S.Ct. 575 (1969). Even so, the burden is on an accused who asserts denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. *State v. Harrell,* 281 N.C. 111, 187 S.E. 2d 789 (1972); *State v. Johnson, supra; State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965).

" 'The word "speedy" cannot be defined in specific terms of days, months or years, so the question whether a defendant has been denied a speedy trial must be answered in light of the facts in the particular case. The length of the delay, the cause of the delay, prejudice to the defendant, and waiver by defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed.' *State v. Brown,* 282 N.C. 117, 191 S.E. 2d 659 (1972). Here, the record is silent as to the cause of the eight to ten months delay in the trial of these cases. The

length of the delay itself is not *per se* determinative, and there is no showing that the delay was purposeful or oppressive or by reasonable effort could have been avoided by the State. *See Pollard v. United States*, 352 U.S. 354, 1 L.Ed. 2d 393, 77 S.Ct. 481 (1957)."

In the instant case, defendant failed to show that the delay in bringing him to trial was due to the neglect or willfulness of the prosecution. There was no showing that the delay was purposeful or oppressive. We hold that the court did not err in denying defendant's motion to dismiss and the assignment of error is overruled. We feel constrained to add, however, that while the burden is on an accused who asserts denial of his right to a speedy trial, there are those instances when the State would be well advised to present evidence explaining the delay.

[2]  Defendant assigns as error an instruction the court gave the jury with respect to the doctrine of possession of recently stolen property. The court instructed as follows (the portion challenged being in brackets) :

"[Under the doctrine of recent possession, if you find beyond a reasonable doubt that the shotgun was stolen, and two, the defendant had possession of this same shotgun, and three, that he had possession so soon after it was stolen that under such circumstances and under such circumstances as to make it unlikely that he had obtained possession honestly,] you may consider this together with all other facts and circumstances in deciding whether or not the defendant is guilty of breaking or entering or larceny."

Defendant argues that the court's use of the word "honestly" was error.

In *State v. Jackson*, 274 N.C. 594, 597, 164 S.E. 2d 369, 370 (1968), we find: "The inference arising from the possession of recently stolen property is described as 'the recent possession doctrine.' Possession may be recent, but the theft may have occurred long before. In that event, no inference of guilt whatever arises. Actually, the possession of *recently stolen goods* gives rise to the inference. The possession, in point of time, should be so close to the theft as to render it unlikely that the possessor could have acquired the property honestly. *State v. Foster*, 268 N.C. 480, 151 S.E. 2d 62; *State v. Jones*, 227 N.C.

47, 40 S.E. 2d 458; *State v. Patterson,* 78 N.C. 470; *State v. Kent,* 65 N.C. 311."

The evidence presented by the State in the case at bar tended to show: On 12 July 1972, Gary Penninger, his wife and 11 year old son, resided in a brick home at Route 1, Marshville, N. C. On that date, Mr. Penninger left home around 7:50 a.m., his wife left around 8:15 a.m., and his son left around 11:00 a.m. All windows and doors in the home were closed and locked when the son left and defendant had no permission to enter the house. Mr. Penninger was the first member of the family to return home and that was around 3:00 p.m. that afternoon. At that time, he found the home had been broken into and numerous articles, including a .12 gauge Remington 870 Wing Master shotgun, had been taken. Around 4:00 p.m. that same day, Boyd Simmons, who worked at a barbershop in Charlotte but lived in, and was a part-time special deputy sheriff of, Union County, and who knew defendant, saw defendant in Charlotte with a shotgun. Simmons tried to purchase the gun from defendant that afternoon but they could not agree on the price. Defendant told Simmons that his uncle had died and his aunt had given him the gun. Simmons and defendant continued to negotiate and some six days later defendant sold the gun to Simmons for $60.00. Some two weeks later, the sheriff of Union County saw the gun in Simmons' possession and suspected that it was the same gun Mr. Penninger had reported stolen. Penninger positively identified the gun by its serial number and other markings. (We take judicial notice of the fact that Marshville, N. C., is in Union County, that Charlotte is in Mecklenburg County, and the two counties adjoin.)

Defendant offered no evidence.

Considering the evidence presented, particularly the brief period of not more than five hours between the time the shotgun was taken from the Penninger home and the time it was seen in defendant's possession in an adjoining county, together with defendant's statement as to how he acquired the gun, we perceive no prejudicial error in the challenged instruction and the assignment relating thereto is overruled.

We have considered the other assignments of error brought forward and argued in defendant's brief but fail to find merit in either of them.

No error.

Judge VAUGHN concurs.

Judge PARKER dissents.

Judge PARKER dissenting.

Because in my opinion the record establishes that defendant was denied his right to a speedy trial, I dissent.

The record shows the following: On 4 August 1972 defendant was arrested on the charges in this case and since that date he has continuously remained in the State's custody. Since 20 August 1972 he has been in Central Prison in Raleigh, serving a sentence imposed on his conviction for an unrelated offense, On 21 August 1972 the grand jury returned the indictment against him in this case.

In September 1972 defendant wrote a letter to the solicitor, sending copies to the resident judge and to his own attorney, asking that this case be tried at the term of court scheduled to begin on 16 October 1972. As the reason for this request, defendant stated that certain witnesses who could clear him were then available but were planning to move out of the State. Prior to 16 October 1972 defendant prepared, evidently on his own, a written "Motion and Request for a Speedy Trial Upon Pending Charge or for a Dismissal for Failure to Prosecute," which he mailed to the clerk of superior court of Union County, who received it on 16 October 1972 and who, on the same date, delivered it to the solicitor.

On 12 February 1973 defendant again wrote to the clerk, sending copies of his letter to the resident judge, to the solicitor, and to his own attorney, referring to his previous requests for trial and to the fact that he had previously advised the court of the impending plans of his witnesses to leave the State. In this letter defendant stated that he had received no response to his previous requests for trial, that his witnesses had relocated in Florida, seriously injuring his defense, but that since he understood that a term of court was to begin on 16 February 1973, he would like his case to be placed on the docket and tried. On 20 February 1973 the resident judge wrote to defendant in Central Prison a letter in which the judge stated that he

was informed that the solicitor expected to try this case "in March or April."

In May 1973, this case was for the first time placed on the calendar for trial. However, by order dated 9 May 1973 the presiding judge on his own motion continued the case due to the fact that he was related by marriage to a close relative of defendant with whom he had discussed the case.

The case next appeared on the calendar for trial at the special session of superior court in Union County which commenced on 4 June 1973. On 5 June 1973 defendant's counsel filed a written motion to dismiss on the ground that defendant had been prejudiced by the delay in that four witnesses who could have presented "substantive and valid defenses" and who had been available when defendant made his request for trial in the fall of 1972 had since moved to points unknown. An evidentiary hearing was held on this motion on 6 June 1973 before Judge Sammie Chess, Jr. At this hearing defendant testified that two of his witnesses, William Cook and Freddie McCrorie, would testify, if available, that defendant had been working with them, painting, at the time the crimes charged were alleged to have been committed. He testified that the other two witnesses, Shirley Hoglen and Phillis Deaton, had been barmaids in a lounge, and that these witnesses would testify, if available, that they had seen defendant purchase the gun from a man who came into the bar. Also at the evidentiary hearing, Ann Green, identified as defendant's fiancee, testified concerning her efforts to keep in contact with these four witnesses during the fall and early winter of 1972. She testified that these witnesses had then been available and had told her that they were willing to testify to present these defenses, that none of the four were any longer available, that she had been told that all four had moved to Florida, but that she did not know how to get an address for any of them. Following the evidentiary hearing, Judge Chess denied the motion for dismissal, but, due to his illness, continued the trial of the case. Subsequently, on defendant's motion, Judge Chess did enter a written order making findings of fact from the testimony presented to him at the evidentiary hearing. Included among these findings of fact are the following:

"7. That sometime in late January or early February of 1973 witnesses moved out of the State of North Carolina and their whereabouts are no longer known by the defend-

ant. That the defendant's mother and one Miss Ann Green have continuously looked for witnesses since they left the State of North Carolina and have exhausted all possible means of finding their present whereabouts and are unable to ascertain their present whereabouts.

"8. That subpoenas issued by the Clerk of Superior Court of Union County for four witnesses were returned unserved by the Sheriff of Mecklenburg County, such subpoenas being issued on the 7th day of May, 1973, and returned on the 9th day of May, 1973, and such subpoenas being marked 'Moved New Address Unknown' or 'Not Found Within Mecklenburg County.' That such witnesses lived within Mecklenburg County from the period of August, 1972, to January, 1973."

\*   \*   \*   \*   \*

"11. That the defendant has been incarcerated in Central Prison since approximately August 20, 1972, and has not been able to make contact with the four witnesses personally."

On his findings of fact, Judge Chess made conclusions of law, including the following:

"2. That the delay occasioned by the failure of the State to bring the defendant to trial until the week of June 4, 1973, did not prejudice the defendant's ability to present defenses in his behalf."

\*   \*   \*   \*   \*

"4. That the delay is not violative of the defendant's right to a speedy trial under the Sixth and Fourteenth Amendments to the U. S. Constitution."

The case was next calendared for trial at the 18 June 1973 criminal session of superior court, but was again continued, this time in the discretion of the court when it appeared that trial of other cases would make it impossible to try defendant's case. Defendant was finally tried before Judge Chess at the special session of superior court which began 30 July 1973. No witnesses were presented for the defense. The State presented only three witnesses. One of these was the victim of the crimes charged, one was the barber and part-time special deputy sheriff who purchased the gun from defendant, and the third was the sheriff of Union County who investigated the case. The

entire testimony presented by the State is narrated on less than twelve pages of the record on this appeal.

While courts must of necessity apply a balancing test in deciding each speedy trial case, *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182, on review of this record I am compelled to the conclusion that defendant's constitutional right to a speedy trial was here violated. Defendant made timely and repeated requests that his case be promptly tried. He put the State on notice of the reason for his requests, pointing out the precise prejudice which might result to him from any delay. This prejudice did in fact occur. (The trial court's conclusion of law to the contrary is simply not supported by the facts which the court found.) During the entire time from defendant's arrest to the day of his trial, both defendant's person and the timing of his trial were within the exclusive control of the State. The State's case was short and simple to present, and no contention has been made that its witnesses were not at all times quickly available.

It was not incumbent on defendant to show willful mala fides on the part of the State in delaying his trial. His right to a speedy trial and the values which that right is designed to protect could be, and in my opinion were, as effectively denied by mere inaction on the part of the State.

I vote to vacate the judgment appealed from and remand this case with direction that defendant's motion to dismiss for denial of his right to a speedy trial be granted.